**2013-1073**

---

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

NEUROREPAIR, INC.

                              Plaintiff-Appellant,

v.

THE NATH LAW GROUP and ROBERT COGAN,

                              Defendants-Appellees,

and

DOES 1-20,

                              Defendants

---

*Appeal from the United States District Court for the Southern District of California in Case No. 09-CV-0986, Judge John A. Houston.*

---

## CORRECTED
## APPELLANT'S OPENING BRIEF

Matthew Klipstein, Esq.
1333 14th. St. #2230
Denver, CO 80202
888-407-1575
matthew.k@neurorepair.com
Attorney for Plaintiff-Appellant NeuroRepair Inc.


June 19, 2014

**Form 9**

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

NeuroRepair, Inc.                    v.  The Nath Law Group and Robert Cogan

No.  2013-1073

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

NeuroRepair, Inc.                 certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

NeuroRepair, Inc.

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

_____

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Timothy W. Kenna, John J. Moura, Gilbert, Kelly, Crowley & Jennett LLP
Tracy Clements, Michael D. Lisi, Krieg, Keller, Sloan, Reilley & Roman LLP        _____

_____

March 17, 2014                                   Matthew Klipstein
_____                    _____
Date                                            Signature of counsel

                                              Matthew Klipstein, Esq.
                                           _____
                                               Printed name of counsel

Please Note: All questions must be answered
cc: _____

# TABLE OF CONTENTS

**CERTIFICATE OF INTEREST**

**STATEMENT OF RELATED CASES**.............................................................1

**STATEMENT OF JURISDICTION**..................................................................2

**STATEMENT OF ISSUES** ................................................................................4

**STATEMENT OF THE CASE**...........................................................................5

**STATEMENT OF FACTS**..................................................................................6

1.    Procedural Facts.........................................................................................6

2.    Substantive Facts .......................................................................................9

       A.    The Creation of NeuroRepair and the Acquisition of
           Intellectual Property………………………………………………… 9

       B.    The Hiring of Cogan and Nath and Cogan's
           Representations…………………………………………………………11

       C.    Cogan's Lack of Competence……………………………………..13

       D.    Replacement of Cogan and Nath as to the Fallon
           Patent Applications……………………………………………………15

       E.    The Incorporation and Reincorporation of NeuroRepair………....17

**SUMMARY OF ARGUMENT**…………………………………………..  18

1.    Defendant's Motion for Summary Judgment…………………………17

2.    Motion in Limine No. 2 …………………………………………………20

3.    The Denial of the Motion for Remand …………………………… 22

4.   The Granting of the Motion in Limine to Exclude Evidence
of Plaintiff's Lost Licensing Opportunity……………………………. 23

**STANDARD OF REVIEW** ..............................................................................24

**ARGUMENT**.................................................................................................... 25

1.   **THE DISTRICT COURT LACKED JURISDICTION** ......................25

A.   The Federal Courts Never Had Subject Matter
Jurisdiction In This Case……………………………………………….25

B.   Plaintiff's Motion to Remand Was Not, and could Not Be
Moot At the Time It Was Made…………………………………..28

C.   As a Matter of Law, the District Court Lacked Jurisdiction
to do Anything More than Remand the Case to State Court……..30

D.   The Presence or Absence of Federal question is Governed
by the Well-Pleaded Complaint Rule………………………….32

2.   **THE DISTRICT COURT ERRONEOUSLY DISPOSED OF
MOST OF PLAINTIFF-APPELLANT'S CASE BASED ON
A MISAPPLICATION OF THE STATUTE OF
LIMITATIONS** ……………………………………………………… .34

A.   Defendants have Not Adequately Pled a Statute of
Limitations Defense………………………………………… . 34

B.   The One Year Statute of Limitations Does Not Apply
to All of NeuroRepair's Claims  …………………………………39

C.   The Statute of Limitations Was Subject to Equitable
Tolling in that NeuroRepair Did Not Know or Have
Reason to Know of Defendants' Wrongful Conduct
More Than One Year Prior to the Filing of the Complaint………47

D.   Defendants Continuing Representation Tolled the
Statute of Limitaitons…………………………………………….49

3.    **THE DISTRICT COURT ERRONEOUSLY HELD THAT NEUROREPAIR DID NOT HAVE STANDING**………………….**52**

    A.    The Defendants Are Estopped From Claiming Plaintiff Lacks Standing…………………………………………………….**..52**

4.    **THE DISTRICT COURT ERRED IN ITS RULING EXCLUDING EVIDENCE OF PLAINTIFF'S LOST LICENSING DAMAGES CAUSED BY DEFENDANTS' DELAY**…………………………...57

**CONCLUSION**………………………………………………….………60

**ADDENDUM**

**CERTIFICATE OF SERVICE**

**CERTIFICATE OF COMPLIANCE**

# TABLE OF AUTHORITIES

## <u>Federal Cases</u>

*Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.,* 504 F.3d 1262 (Fed. Cir 2007) .............................................. 25, 26

*Anderson v. Georgia Gulf Lake Charges,* LLC, 342 F.Appx. 911, 915 (5th Cir. 2009) .......................................................................................... 24

*Ariosta* v. *Fallbrook Union High School Dist.*, 2009 WL 1604569, at \*8 (S.D. Cal.) ........................................................................................ 38

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ........................................................... 35

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)....................................... 35

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 162, 109 S.Ct. 971 (1988)..................................................................................... 28

*Caterpillar, Inc*. v. *Williams*, 107 S. Ct. 2425 (1987) ....................................... 33

*Crown Operations Int'l v. Solutia Inc*., 289 F.3d 1367, 1375 (Fed. Cir. 2002.) ....................................................................................................... 24

*CTF Dev., Inc. v. Penta Hospitality,* 2009 WL 3517617, at \*7-8 (N.D. Cal.)............................................................................................................ 35

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) ............. passim

*Davis v. Mutual of Omaha Ins. Co*., 290 F.Supp. 217 (W.D.Mo.1968)........... 31

*Emp. Credit Union v. Mitchell*, 421 F.Supp. 1327 (W.D.Mo.1976) ............... 32

*Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 701 (2006)....................................................................................................... 27

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg*., 545 U.S. 308, 314 (S. Ct. 2005) ................................................................... 27

*Gunn v. Minton*, 133 S.Ct. 1059 (2013)..................................................... passim

*Heller Fin., Inc.* v. *Midwhey Powder Co.*, Inc., 883 F.2d 1286, 1294 (7th Cir. 1989) ............................................................................... 35

*Henderson* v. *Shinseki*, 131 S.Ct. 1197 (2011) ................................................. 22

*International Tin Council v. Amalgamet Inc.*, 645 F.Supp. 879 (S.D. N.Y.1986) ...................................................................................... 32

*Kontrick* v. *Ryan,* 124 S.Ct. 906 (2003)..................................................... 22, 30

*Kumho Tire co., Ltd. v. Carmichael* 119 S.Ct. 1167 (1999)............................. 59

*Landmark Screens, LLC,* v. *Morgan, Lewis, & Boclius, LLP, and Thomas Kohler*, 676 F.3d 1354 (Fed. Cir. 2012) ........................................... 48, 49

*Lowry v. Alabama Power Co.*, 483 F. 3rd 1184 (11th Cir. 2007)................. 23, 31

*Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379 (1884)........................ 22, 30

*Myers Investigative and Security Services v. U.S.,* 275 F.3d 1366 (Fed. Cir. 2002) ................................................................................ 24

*Palmer v. Oakdale Farms, Inc.,* 2010 WL 2605179, at *4 (W.D. Va.) ........... 35

*Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) ..................................................................................... 24

*Puckett v United States*, 556 U.S. 129, 134 (1992) ......................................... 52

*Servpro Industries, Inc. v. Schmidt*, 905 F. Supp. 475, 482 (N.D. Ill. 1995) ... 38

*Shechter* v. *Comptroller Of City Of New York*, 79 F.3d 265 (2nd Cir. 1996) ....................................................................................... 38

*Stanhope v. Ford Motor Credit Co., Inc.*, 483 F.Supp. 275 (W.D. Ark.1980)................................................................................... 31

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F.Supp.2d 1153 (S.D. Cal. 2008) ............................................................... 19, 45

*Whysak v. City Bank*, 607 F.2d 824 (9th Cir. 1979) ........................................ 36

*Woodfield* v. *Nationwide Mutual Ins. Co.*, 193 F.3d 354, 362 (5th Cir. 1999) ............................................................................................. 35, 38

## State Cases

*Addison* v. *State*, 21 Cal.3d 313, 146 Cal.Rptr 224 (Cal. 1978)...................... 49

*American Airlines, Inc. v. Sheppard Mullin, Richter & Hampton,* 96 Cal.App.4th 1017, 1032, 117 Cal.Rptr.2d 685 (Cal. Ct. App. 2002)..... 46

*Black v. Shearson, Hammill & Co.,* 266 Cal.App.2d 362, 367, 72 Cal.Rptr 157 (1968).......................................................................... 41, 42, 43, 47

*Charnay v. Cobert* 145 Cal.App.4[th] 1708, 52 Cal.Rptr.3d 712 (2006) ............ 41

*City of Hollister v Monterey Insurance Company* 165 Cal. App. 4th 455, 486; 81 Cal.Rptr.3d 72 (Cal. Ct. App. 2008) ......................................... 53

*Gutierrez v. Mofid*, 39 Cal.3d 892, 41 Cal.Rptr.2d 768 (Cal. 1985) ............... 48

*Hobbs v. Bateman Eichler, Hill Richards, Inc*., 164 Cal.App.3d 174, 210 Cal.Rptr 387 (1985) ............................................................................... 20

*In Re: Griffen*, 67 Cal. 2nd 343, 347-348, 62 Cal.Rptr.1 (Cal 1967) ............... 54

*McCann v. Welden*, 153 Cal.App.3d 814, 82, 200 Cal.Rptr. 703 (Cal. Ct. App. 1984) ............................................................................................. 48

*Mount Holyoke Homes LP v California Coastal Commission*, 167 Cal. App. 4th 830, 842, 84 Cal.Rptr.3d 452 (Cal. Ct. App. 2008) ................ 54

*Nielsen v. Beck*, 157 Cal.App.4[th] 1041, 1049-50, 69 Cal.Rptr.3d 435 (2007)................................................................................................... 50

*Nogart v Upjohn Company* 21 Cal. 4th 383, 411, 87 Cal.Rptr.2d 453 (Cal 1999) .................................................................................................. 53

*O'Neill v Tichy*, 109 Cal.App.4[th] 114, 120-121, 134 Cal.Rptr.2d 467 (1993).................................................................................................. 50

*Oakland Raiders v Oakland-Alameda County Coliseum, Inc*. 144 Cal.
App. 4th 1175, 1189-1190, 51 Cal.Rptr.3d 144 (Cal. Ct. App. 2006)... 53
*R.D. Reeder Leaving Company, Inc. v. Cypress Insurance Company* 3
Cal.App.3d 995, 999, 84 Cal.Rptr. 98 (Cal. Ct. App. 1970)................. 57

*Stanely v. Richmond*, 35 Cal.App.45 1070, 1077, 41 Cal.Rptr. 768 (Cal.
Ct. App. 1995) ........................................................................ 19

*Stanley v. Richmond,* 35 Cal.App.4th 1070, 1077, 41 Cal.Rptr.2d 768
(Cal. Ct. App. 1995) ............................................................... 45

## Federal Statutes

28 U.S.C. §1338................................................................................ 2

28 U.S.C.A. §1331 ......................................................................... 33

28 U.S.C.A. §1441 ......................................................................... 33

## State Statutes

Cal. Civ. Pro. §340.6................................................................ 38, 49

Cal. Corp. Code Sections 16100 .................................................. 43

California Code of Civil Procedure § 340.6 ............................... 39, 40

California Corporations Code § 16202 ......................................... 43

California Corporations Code §16308 .......................................... 43

## Federal Rules

Fed.R.Civ.P. 8,.............................................................................. 34

Federal Rule of Evidence 703....................................................... 59

Federal Rules of Appellate Procedure 4 ......................................... 4

# **State Rules**

California Rule of Professional Conduct 3-110.............................................. 41

California Rule of Professional Conduct 3-500........................................ 42, 47

## STATEMENT OF RELATED CASES

There has not been any other appeal in and from the action that is the subject of this appeal (Case No.: 09-CV-0986) before this or any other appellate court.

There are no cases known to counsel to be pending in this or any other court that will directly affect or be affected by this Court's decision in this pending appeal.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## STATEMENT OF JURISDICTION

This Court clearly has jurisdiction to review the actions and decisions of the Federal District Court for the Southern District of California respecting a case removed to that Court from state court on the ground that it involves questions of federal patent law [28 USC §1295]. However, Plaintiff-Appellant NeuroRepair, Inc. (hereinafter generally "NeuroRepair" or "Plaintiff") contests the federal courts' subject matter jurisdiction over this action.  While Defendants, the Nath Law Group (sometimes calling itself "Nath & Assoc.," hereinafter "Nath law firm") and Robert P. Cogan, ("Cogan") (collectively "Defendants") invoked district court jurisdiction under 28 U.S.C. §1338, no claim stated in the Complaint "arises under any Act of Congress relating to patents" within the scope of 28 U.S.C. § 1338 and the claims do not require a court to necessarily determine a substantial question of patent or any other federal law.  See *Gunn v. Minton*, 133 S.Ct. 1059 (2013).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

NeuroRepair[1] appeals from the final judgment entered in this matter after the granting of Defendants' Motion in Limine No. 2 disposing of the entire case on September 27, 2012, just days before trial, based on the District's determination that Plaintiff lacked standing. (A1-2) NeuroRepair further appeals from the July 13, 2011 order granting Defendants' Motion for Summary Judgment, the July 13, 2011 order denying Plaintiff's Motion for Summary Judgment (A3-25), the August 19, 2011 order denying Plaintiff's Motion for Reconsideration (A26-29), the March 12, 2012 order granting Defendants' Motion in Limine to Exclude/Preclude Evidence of Plaintiff's Lost-Licensing Opportunity Damages at Trial (A30-33), the July 1, 2013 order Denying Plaintiff's Motion for Reconsideration and to Alter or Amend Judgment, the July 1, 2013, order denying Plaintiff's Motion to Remand

---

[1] When NeuroRepair retained Defendants to prosecute the pending patent applications the company had obtained from the University of California, and to perform other Intellectual Property related work, the company was a recently formed California corporation (the corporation was formed because the University would only deal with a corporation and not an individual). In or around May, 2007, on the advice of counsel, including Defendant Robert Cogan, NeuroRepair simultaneously dissolved in California and reincorporated in Delaware. Defendant Cogan, in fact, prepared the documents pursuant to which the California corporation's patent applications, and Intellectual Property, were transferred to the Delaware corporation that replaced it. The Plaintiff in this case is clearly identified in the Complaint as the Delaware corporation.

None of these facts respecting the company's state of incorporation should be of any consequence. The District Court, however, in a ruling that was never explained, and is, in Appellant's view, inexplicable, made the company's dissolution in California and simultaneous reincorporation in Delaware, not just important, but dispositive. This issue is addressed in the section of this Brief entitled "Standing."

(A34-35) and all related post judgment costs and awards, including the costs entered on November 1, 2012.

NeuroRepair filed its initial Notice of Appeal in a timely manner on November 14, 2012.  (A7429-7430)  The appeal was deactivated by this Court on November 30, 2012.  (A7495)  On July 2, 2013 this Court issued an order denying NeuroRepair's Motion to Remand without prejudice subject to Federal Rules of Appellate Procedure 4(a) (4) and ordered the appeal reactivated.  (A7499-7500)  Pursuant to FRAP 4(a) (4) (B) (ii) an amended notice of appeal was filed on July 16, 2013 (A7501-7502) and July 29, 2013.  (A7504-7505).

## STATEMENT OF ISSUES

1.     Whether the District Court had subject-matter jurisdiction over the case in that the claims set forth in the well-pleaded Complaint did not arise under any Act of Congress relating to patents or present any other federal question, and there is no claim of diversity jurisdiction.

2.      Whether the District Court improperly granted Defendants' Summary Judgment Motion on NeuroRepair's claims for professional negligence, breach of fiduciary duty, breach of written contract, breach of oral contract, negligence, fraud, and breach of implied covenant of good faith and fair dealing and also

/ / /

denied Plaintiff's Motion for Partial Summary Judgment, both based on a misapplication of a California statute of limitations.

3.      Whether the District Court improperly granted Defendants' Motion in Limine No. 2 holding that Plaintiff lacked standing in the action in clear contravention of the record before it.

4.      Whether the District Court erroneously granted Defendants' Motion in Limine No. 1 excluding evidence regarding delay damages and lost opportunities caused by Defendants' fraud as speculative or uncertain, without reference to, or consideration of, the requirements set forth in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993)

## STATEMENT OF THE CASE

After nearly two years of no progress on related patent prosecutions and more than $200,000 in legal fees paid, NeuroRepair filed an action against Defendants in the California Superior Court in and for the County of San Diego, for, *inter alia*, professional negligence (legal malpractice), breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, negligent misrepresentation and false promises (fraud).   NeuroRepair, having no prior experience with patent prosecution, only discovered Defendants' malfeasance after consulting successor counsel to prosecute the patent applications at which Defendants had failed (A57-76).

The Complaint in this case, as in most civil actions, alleges more than one cause of action. First and foremost, however, when originally filed in the state court, this was a case about fraud, fraud perpetrated by a law firm and several of the members thereof in conspiracy against a client, fraud that began by the law firm from its very first contact with NeuroRepair and continued unabated throughout the relationship of the parties. Through a series of erroneous rulings by the District Court, NeuroRepair was deprived of its ability to prosecute its case against the Defendants.

Now, however, on appeal to this Honorable Court, this case is essentially about jurisdiction. NeuroRepair contends that the District Court below never had proper subject matter jurisdiction pursuant to the supreme Court's explication of the law in *Gunn v. Minton*, 133 S. Ct. 1059 (2013).

## STATEMENT OF FACTS

### 1. Procedural Facts

On March 20, 2009, NeuroRepair filed a lawsuit in State Court against Cogan and Nath, alleging state law claims for professional negligence, breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, negligent misrepresentation, and false promises. (A57-76) Each of these claims arose from Cogan and Nath's representation of NeuroRepair in

prosecution of NeuroRepair's patent applications. (A57-76) Defendants removed the action to Federal Court on or about May 7, 2009, claiming that the case "arises under" patent law. (A54-55)

On November 3, 2010, NeuroRepair filed a Motion for Partial Summary judgment as to Cogan and Nath's Liability for Malpractice and Breach of Fiduciary Duty. (A1572-1615) The motion was opposed by Cogan and Nath. (A2923-3388) A reply to the opposition was filed by NeuroRepair. (A3828-4109) On December 30, 2010, Cogan and Nath filed a Motion for Summary Judgment directed at all causes of actions in NeuroRepair's complaint. (A2276-2911) The motion was opposed by NeuroRepair. (A4150-4329) Defendants filed a reply to plaintiff's opposition. (A4969-5039) On July 13, 2011, the District Court granted Cogan and Nath's Motion for Summary Judgment as to the causes of action for professional negligence, breach of fiduciary duty, breach of written contract, breach of oral contract, breach of implied covenant of good faith and fair dealing and negligent misrepresentation (A3-25) The Court denied Cogan and Nath's Motion for Summary Judgment as to the cause of action for False Promise [fraud]. (A25) Further, on the same date, the Court denied NeuroRepair's partial summary judgment motion on the issue of liability on the grounds that the professional

/ / /

/ / /

negligence and breach of fiduciary duty claims were time barred.  (A25)  When

NeuroRepair sought reconsideration of the District Court's ruling, the Court denied

that Motion (A26-29), just as it had denied every Motion made by NeuroRepair.

On February 3, 2012, Cogan and Nath filed a motion in limine to

exclude/preclude evidence of Plaintiff's Lost – Licensing Opportunities Damages at

trial.  (A6109-6691)  The motion was opposed by NeuroRepair. (A6692-6713)

Defendants' filed a reply to the opposition.  (A6714-6757)  On March 12, 2012, the

District Court granted Cogan and Nath's Motion in Limine to Exclude/Preclude

Evidence of Plaintiff's Lost-Licensing Opportunity Damages at trial.  (A29-33)

On August 20, 2012, Cogan and Nath filed a Motion in Limine challenging

NeuroRepair's standing to bring the subject action.  (A6942-7068))  NeuroRepair

opposed the motion (A7158-7189) Defendants filed a reply to Plaintiff's

Opposition.  (A7190-7249)  On September 27, 2012, the District Court granted

Cogan and Nath's Motion in Limine as to the standing of NeuroRepair, Inc., which

disposed of the case.  (A1-2)  Judgment was entered in favor of Cogan and Nath on

the same day.  Costs were awarded without a hearing. (A7250)  NeuroRepair

immediately filed a Motion to Alter or Amend the Judgment and Motion for

Reconsideration on the Motion in Limine.  (A7251-7291)  Defendants opposed

Plaintiff's Motion on October 29, 2012.  (A7394-7420)  On February 22, 2013,

while NeuroRepair's Motion for Reconsideration of the Ruling on Defendant's

Motion in Limine regarding standing was still pending before the court,

NeuroRepair filed a Motion to Remand. (A7438-7439, 7440-7464) Both the

Motion for Reconsideration and the Motion for Remand were opposed by

Defendants. (A7465-7488) In an incongruous ruling, on July 1, 2013, the District

Court denied NeuroRepair's Motion for Reconsideration of Cogan and Nath's

Motion in Limine, while asserting in its order that the motion was moot in that Mr.

Klipstein (at that time an attorney licensed to practice law in the State of Colorado

and previously licensed to practice law in the State of California and had been, and

to his knowledge still was, a member of the Southern District Bar) had violated a

local rule by signing the Motion himself as opposed to through his attorney of

record, the Court nonetheless ruled on and denied the motion. Having denied the

motion to reconsider, the court further denied the Motion for Remand as moot.

(A34-35) This appeal ensued.

### 2.  Substantive Facts

    A. <u>The Creation of NeuroRepair and the Acquisition of Intellectual
Property.</u>

Plaintiff NeuroRepair was founded by Matthew Klipstein after he suffered

a devastating neurological injury resulting from an accident in an athletic

competition. (A1604) Mr. Klipstein, who was at the time a relatively young and

accomplished athlete and a successful entrepreneur, was rendered permanently

disabled.    (A1604)    Following the accident, Mr. Klipstein spent months in hospitals.  During that time he was repeatedly advised by his doctors that "brain injuries never heal; there is no treatment; you will never recover."  (A1604)  In his search to find some way to cure his own injury, Mr. Klipstein located Dr. James   H.   Fallon,   a   world-renowned   Professor   of   Neuroanatomy   and Neurobiology at the University of California, School of Medicine at Irvine. (A1604)    Dr. Fallon had discovered that a naturally-occurring endogenous protein called Transforming Growth Factor-alpha ("TGF-a"), has remarkable neurotrophic and mitogenic effects. When administered to an injured brain, TGF-a stimulates a massive proliferation of adult pluripotent stem cells in the brain that migrate to the locus of damage and differentiate into the kind of cells that have been damaged or destroyed.  (A1604-1605)  Matthew Klipstein was advised by the UCI Office of Technology Transfer that further work by Dr. Fallon required funding by a corporate sponsor.  (A1605)   Ultimately, the University conveyed ownership of all of the intellectual property connected with the Patent Applications to NeuroRepair   (A1605). [The NeuroRepair patent applications arising from Dr. Fallon's discoveries are hereinafter referred to as the "Fallon Applications" to distinguish them from other NeuroRepair patent matters].

As time passed, the potential window to find an effective cure for Mr. Klipstein began to close and his focus on NeuroRepair and Dr. Fallon's work

became a business venture ito recoup the very large sums of money he had invested. (A4108)  Mr. Klipstein's goal was to accomplish a sale that would recoup the millions of dollars invested in NeuroRepair. (A4108)  Accordingly, commercializing NeuroRepair's intellectual property became a priority. (A4108)  The goal of NeuroRepair was to sell the intellectual property to a company that would advance it to an FDA-approved drug available to the millions of people who suffered from brain injury or disease (A4108) or to license the property.

B. <u>The Hiring of Cogan and Nath and Cogan's Representations</u>

In or about December 2005, NeuroRepair retained Cogan and Nath to prosecute and obtain certain biotech and other patents in connection with the intellectual property developed by Dr. Fallon and other IP owned by NeuroRepair [a business process called the "Klipstein Equilibrium"]. (A1605-1606)  When Mr. Klipstein discussed with Mr. Cogan the possibility of Cogan and Nath representing NeuroRepair in the prosecution of the Patent Applications NeuroRepair had acquired from the University of California, Cogan made a number of false, fraudulent, and intentionally misleading statements, all intended to induce Klipstein to retain Cogan and Nath to represent NeuroRepair. (A1619)  Cogan represented to Klipstein that both he and the Nath Law Firm were exceptionally well-qualified to prosecute the complex biotechnology Patent Applications. (A1619)  Cogan represented to Mr. Klipstein that he was

thoroughly experienced as a patent prosecutor and litigator and that he possessed particular skills necessary to successfully represent NeuroRepair before the PTO. (A1619)  Cogan further represented that, while his background was not in any form of life science, in his professional opinion, a life sciences background was not required to successfully prosecute the Fallon Applications.  (A1619)  Instead, Cogan asserted that the necessary skill to obtain Patents from the then-pending Applications was an understanding of how the Patent Office works and an ability to "empathize with examiners rather than insult them" which, he claimed had worked for him before and would work again.  (A1619, 1632-1636).  Finally, Cogan assured Klipstein that should the prosecution require knowledge of any life science, the Nath firm had several partners, including the firm's founder, Gary Nath, who were well versed in those disciplines.  (A1606)

At the time Mr. Klipstein initially met with Cogan, both the Nath web site and Cogan's business card represented that Cogan was a "Partner" in the Nath firm. However, Cogan was not a partner in the Nath firm, nor had he ever been an equity partner in any law firm.  (A1739-1745).  Rather, he was merely an "at will" contract employee whose compensation was determined by billings paid by the clients he brought to the firm and his personal hourly billings.  Aside from this compensation, Cogan received no compensation from the Nath firm. Neither Cogan nor any other Defendant ever revealed Cogan's true relationship with the

Nath firm.    NeuroRepair only learned the truth through discovery in the underlying case.    (A1739-1745)    It is apparent from Cogan's compensation arrangement with the Nath firm, that Cogan had a powerful incentive to keep others from working on the NeuroRepair patent applications and to do all the billable work himself.    Even after he had been stridently instructed by his manager to turn the matter over to another attorney, Cogan never did.  (A1722) Moreover, it is clear that Cogan had an incentive to ensure that NeuroRepair's patents were not issued.  He had motive to, as NeuroRepair alleges, sabotage the applications in order to ensure that they were repeatedly rejected, so he could continue to "work" on them and bill NeuroRepair for his "work."    Once NeuroRepair had its patents (through the efforts of subsequent counsel, two of them were issued within a matter of weeks, and then two more shortly thereafter), NeuroRepair would have no further use for Cogan or Nath, and Cogan was desperate to continue billing NeuroRepair.

### C. Cogan's Lack of Competence

As early as 2004, letters and emails from other lawyers in the Nath firm (obtained through discovery from Cogan's personnel file) reveal that there were significant concerns regarding Cogan's competence in general and by 2007, they had specific concerns with his handling of the NeuroRepair patent prosecution. (A4336-4343, 4033)    In violation of the California Rules of Professional

Conduct, no one advised NeuroRepair that the Nath firm had concerns about Cogan's competence in general or his handling of the NeuroRepair Patent Applications in particular.  (A1620)  In fact, Nath deliberately concealed from NeuroRepair the firm's internal investigation of Cogan and its conclusion that he not only lacked general competence, but had mishandled the NeuroRepair applications and overbilled NeuroRepair.  (A4033)  Cogan's personnel file at the Nath firm contained at least two letters of rebuke from other members of the firm; one of these was from his "Managing Partner," Ross Epstein, chastising him for poor performance on NeuroRepair matters and instructing him to transfer NeuroRepair's work to another member of the firm.  (A1620, 1662-1665, 4336) These documents reveal that, even within the law firm that employed him, Cogan was held in low esteem.   Nath never revealed these problems to NeuroRepair. (A1610-1611)  No one, prior to Discovery in the present litigation, ever advised NeuroRepair that NeuroRepair was by far Cogan's largest client and his primary source of income.  (A1607-1608)

Cogan, who has no Life Science education, was completely unqualified to handle the Patent Applications and failed utterly in his "efforts" to obtain NeuroRepair's Patents.  (A1611, 1730-1731)  Cogan never brought any qualified member of the firm, if there was one, in to substantively assist him with the Patent prosecutions.  In fact, the firm's billing records show that Cogan billed 88

percent of the fees charged to NeuroRepair on the patent application matters.

Cogan repeatedly represented that he would enlist the assistance of Susanne

Hopkins, who also claimed to be a "Partner" in the firm, but wasn't, and who

Cogan claimed had a Ph.D. in biology, but didn't.    (A1736).    In fact, Ms.

Hopkins had no Ph.Dd in anything, she has a Bachelor's Degree in Biology from

the State University of New York at Buffalo, (A1736) and Ms. Hopkins billed a

combined total of 83 hours in the three NeuroRepair Patent Application matters, as

compared to Cogan's 640 hours, over two years  (A1747-1825)

   D. <u>Replacement of Cogan and Nath as to the Fallon Patent
       Applications</u>

On August 22, 2007, NeuroRepair advised Cogan that NeuroRepair had

decided to replace Cogan and the Nath Law Firm with new counsel to deal with

the USPTO as to the Fallon Patent Applications.    (A1621, 1666-1668).

NeuroRepair, however, did not terminate its relationship with Defendants who

were still prosecuting another patent application for NeuroRepair (the "Klipstein

Equilibrium Patent").    (A1621)    Moreover, Cogan continued to perform

substantive work on the Fallon patent prosecutions through July 2008.  (A4749-

4766)  For example, between at least March 4, 2008 and July 24, 2008, Cogan

was negotiating the terms of a revised IP acquisition agreement with U.C. Irvine

and was keeping Mr. Klipstein informed of his progress.  (A4749-4766, 4340,

4342-4344, 4345-4348)    Defendants issued bills to NeuroRepair for work performed in March and April of 2008, (A4329-4350) and in September of 2008. (A4351)   In fact, the ledger on the account between Defendants and Plaintiff reference such an ongoing relationship until at least September of 2008.  (A4352-4376)

Eventually NeuroRepair hired attorney James Haley of Ropes & Gray to take over the Fallon Patent prosecutions. (A1621)  Attorney Haley undertook to submit declarations from Dr. Fallon in support of the patent prosecution and within weeks of submitting such declarations the patent applications were allowed by the Patent Office.[2]    (A1621, 1671-1716)   In fact, the Notices of allowance specifically state that the patents were allowed because of the submitted Declarations.  In February 2009, while having its patent files reviewed

/ / /

/ / /

---

[2] "The MPEP states that to overcome an Application rejection based upon Obviousness, as was the case here, the applicant must respond with "Evidence" [MPEP 716.01], and specifically describe such evidence as an "affidavit or declaration" of the inventor pursuant to 37 CFR 1.132.  Immediately following this simple instruction is the equally simple caution that "ATTORNEY ARGUMENTS CANNOT TAKE THE PLACE OF EVIDENCE."  [ALL CAPS IN ORIGINA].

However, with all his years of experience, Cogan never even suggested to either Mr. Klipstein or Dr. Fallon that such a declaration might be a good idea.  For years, in response to each rejection from the Patent Office, Robert Cogan responded with a written argument he knew 2ould be rejected out of hand.  He knew and intended, that is "efforts" would fail.

by another law firm, NeuroRepair discovered for the first time that Cogan and

Nath were guilty of malpractice, breach of contract and fraud.  On March 21, 2009

NeuroRepair initiated the action against Cogan and Nath.

### E.  The Incorporation and Reincorporation of NeuroRepair

When NeuroRepair retained Defendants to prosecute the pending patent

applications, NeuroRepair was a recently formed California corporation[3].  In or

around May 2007, on the advice of counsel, including Defendant Robert Cogan,

NeuroRepair reincorporated in Delaware.  (A7177-7178)  NeuroRepair requested

their corporate counsel and Cogan to do whatever was necessary and/or prudent to

reincorporate the company in Delaware.   (A7178)   NeuroRepair was then

reincorporated in Delaware with the same shareholders, officers and directors with

an assignment of all of the assets, rights and obligations of the predecessor

company.  (A7178) Cogan was responsible for preparing and filing with the Patent

Office such documents as he thought prudent to assign the then-pending patent

applications from the predecessor to the successor corporation.   (A7178) Cogan

advised NeuroRepair that the Assignment was a "formality" made for potential

future tax advantages because although reincorporated in a new state, NeuroRepair

///

///

---

[3] Necessitated by the fact that the University of California would only allow a
corporation to sponsor the ongoing research of a research professor.

remained the same entity.  (A7178)  NeuroRepair was provided with a copy of the Patent Application assignment by Defendants with a representation that the Assignment had been filed with the Patent Office.  (A7178, 7183-7184).

The conduct of Defendants transverses both corporate entities.  (A7179)  In fact Cogan and Nath treated the entities as one and the same.  (A7178-7179)  Cogan represented to Mr. Klipstein that the change in corporate entity was a mere formality and that Cogan himself would take appropriate actions to assign all rights in NeuroRepair's IP from the California to the Delaware entity.  (A7178)  Cogan and Nath, treating the entities as one, and not distinguishing between them continued on the same course of representation after the incorporation in Delaware, (A4749-4766, 4340, 4342-4344, 4345-4348).  Further, the Nath Law Firm's billing invoice of May 31, 2007 clearly indicates that Cogan was working on the assignment transferring the rights and interest in the patents application.  (A7177-7181)

## SUMMARY OF ARGUMENT

1. Defendant's Motion for Summary Judgment

The District Court's Order granting Defendants' Summary Judgment Motion as to all but one of the causes of action of Plaintiff's complaint should be reversed. The basis for the summary judgment motion was that NeuroRepair's claims were barred by a statute of limitations.  The District Court however, should not have

even considered the motion or the issue of statute of limitations in that Defendants, in their Answer to the Complaint, failed to adequately plead a statute of limitations as an affirmative defense as required under the law.

Beyond this glaring flaw, Plaintiff's Complaint and the undisputed facts clearly established that an intentional failure to disclose material facts and other acts of fraud were alleged.  Accordingly, if any statute of limitations applied, the statute of limitations for fraud and not the negligence provisions applied by the District Court should have been applied to, at a minimum, the fraud and breach of fiduciary duty causes of action.  See *Stanely v. Richmond*, 35 Cal.App.45 1070, 1077, 41 Cal.Rptr. 768 (Cal. Ct. App. 1995) and *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F.Supp.2d 1153 (S.D. Cal. 2008)

Additionally, the District Court completely ignored NeuroRepair's argument that the statute of limitation for legal malpractice was tolled (1) because of Defendants' continuing representation of NeuroRepair and (2) until Plaintiff knew or should have known of Defendants' wrongful acts.  See California Code of Civil Procedure §340.6(a)(1), *infra.*   The District Court further ignored California law that:

> The distinction between the rules excusing a late discovery of fraud and those allowing late discovery in cases in the confidential relationship category is that in the latter situation, the duty to investigate may arise later because the plaintiff is entitled to rely upon the assumption that his fiduciary is acting on his behalf.

*Hobbs v. Bateman Eichler, Hill Richards, Inc.*, 164 Cal.App.3d 174, 210 Cal.Rptr 387 (1985)

While Appellant filed a motion for reconsideration addressing the erroneous ruling, the District Court maintained its mistaken position and denied the motion for reconsideration.

2. <u>Motion in Limine No. 2</u>

Having disposed of all but one of NeuroRepair's claims, the District Court then, on a Motion in Limine made by Defendants just days before trial, ruled that Plaintiff lacked standing to bring the lawsuit. The Motion in Limine was based on the clearly erroneous assumption that NeuroRepair, Inc., the California Corporation and its successor NeuroRepair, Inc., the Delaware Corporation were two separate and distinct entities and were considered separate and distinct entities by Defendants. Defendants' undisputed actions, however, belie this assertion. Cogan and Nath were instrumental in advising NeuroRepair to change the state of incorporation of NeuroRepair and effecting such change. They treated the entities as one and the same and, in fact, represented to NeuroRepair that the change in corporate entity was merely a formality that might, ultimately, have significant tax benefits, given that NeuroRepair's IP could be worth hundreds of millions of Dollars. Cogan and Nath did not distinguish between the entities and continued on in the same course of representation, billing and being paid under the same account

number and statement number sequence.  Therefore, Defendants should be estopped from claiming that NeuroRepair was not the single entity it actually was and they treated it to be.

More importantly, the District Court's ruling wrongly assumed that only the original California corporation was harmed by Defendants [the Court appeared to believe that only Defendants' initial lies were of consequence] and that no wrong was done to the continuing successor Delaware corporation, which is the named Plaintiff in the Complaint.  The undisputed record shows that Defendants' fraudulent conduct continued unabated harming NeuroRepair irrespective of its state of incorporation.  Defendants continued to conceal that Cogan was not, as he represented to be, a Partner in the law firm, that no life science expert was working on the NeuroRepair patent applications, that Cogan was generally regarded by the firm as incompetent, that NeuroRepair was Cogan's primary source of income, and that Cogan's manager had scathingly instructed him to turn NeuroRepair's work over to another member of the firm because of his overbilling [Cogan never did relinquish control of NeuroRepair's work as instructed].

NeuroRepair reincorporated in Delaware in March 2007.  On July 27, 2007. Ross Epstein, Cogan's "Managing Partner," wrote an email to Cogan, copied to the firm's senior member, Gary Nath, saying:

/ / /

21

> You must, and I mean MUST, let him [Matthew Klipstein, NeuroRepair's founder and CEO] know that you cannot work any more on this matter [the NeuroRepair patent applications] and that Sue [Susanne Hopkins] will be taking over with your MINIMUM support. Enough is enough. This handoff should have happened months ago. I do not understand why it still has not. If it doesn't happen this week, I will be forced to contact Matthew myself.

[Emphasis is original] (A4336)  Neither Epstein nor Gary Nath, nor anyone at the Nath firm ever advised anyone at NeuroRepair of their concerns about Cogan's poor work (or deliberate failure to obtain NeuroRepair's patents), or Cogan's overbilling.  Under California law, this is actionable fraud.  See *Black v. Shearson, Hammill & Co.,* 266 Cal. App .2d 362, 367, 72 Cal.Rptr 157 (1968).

   3.  The Denial of the Motion for Remand

   The jurisdictional issue raised in NeuroRepair's Motion to Remand was not, and could not, as a matter of law, be, moot.  It is clear from the Supreme Court's Decision in *Gunn*, *supra*, that this is a state law case that belongs in state court. As a matter of law, the District Court lacked jurisdiction to do anything other than to remand the case to state court, where it had always belonged.  See discussion of *Kontrick* v. *Ryan,* 124 S.Ct. 906 (2003) and *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379 (1884), *infra*.

   The matter of improper Removal where subject matter jurisdiction is lacking cannot be waived or ruled untimely raised because it is jurisdictional and not merely procedural. *Henderson* v. *Shinseki*, 131 S.Ct. 1197 (2011), *Arbaugh* v.

*Y & H Corp.*, 126 S.Ct. 1235 (2006), *Lowry v. Alabama Power Co*., 483 F. 3rd 1184 (11th Cir. 2007).

NeuroRepair's case does not present patent infringement claims and it does not necessitate determination of patent law issues. Nor does it raise any substantial federal question. Instead, this case presents only state law claims for malpractice, fraud, and breach of fiduciary duty (a distinct tort under California law).

4. The Granting of the Motion in Limine to Exclude Evidence of Plaintiff's Lost Licensing Opportunity

Having summarily disallowed Plaintiff's foundational expert testimony, the Court summarily adjudicated in a motion in limine just days before the scheduled trial that delay damages in the form of lost licensing opportunities would not be permitted at trial. Without explanation, and inexplicably, the District Court disregarded the evidence submitted by Plaintiff, which clearly met the burden for admission of opinion testimony with respect to delay damages, and the particular element of delay damage classified as lost-licensing opportunity as required under *Daubert*, *supra* and the Federal Rules of Evidence. Rather the court summarily concluded, without considering the qualifications of Plaintiff's experts or the methodology they employed in reaching their conclusions that the claimed damages were "speculative," "remote" and "uncertain." The District Judge dismissed the calculation of damages performed by Dr. Daniel Burns, whose

qualifications and methodology employed in this case are both beyond reproach, by doing precisely what the Supreme Court in *Daubert, supra*, said must not be done: the Judge saw a conclusion of damages totaling over $200 million and, without reference to the facts, the qualifications of the expert, or the careful methodology employed, simply felt that was too high a number.

## **STANDARD OF REVIEW**

The standard of review for all but one of the issues raised by this appeal is de novo. Jurisdictional issues are reviewed de novo. P*rasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1335 (Fed. Cir. 2008). The Court's denial of (or in this case refusal to rule on) a Motion for Remand is reviewed de novo. *Anderson v. Georgia Gulf Lake Charges,* LLC, 342 F.Appx. 911, 915 (5th Cir. 2009) Orders granting or denying summary judgment are also reviewed de novo. *Crown Operations Int'l v. Solutia Inc*., 289 F.3d 1367, 1375 (Fed. Cir. 2002.) Further, whether a party has standing to bring a suit is also reviewed de novo by the court. *Myers Investigative and Security Services v. U.S.,* 275 F.3d 1366 (Fed. Cir. 2002) However, a court of appeals is to apply an abuse of discretion standard when it reviews a trial court's decision to admit or exclude expert testimony. *Sundance, Inc. v. DeMonte Fabricating LTD*, 550 F.3d 1356 (Fed. Cir. 2008)

/ / /

/ / /

# ARGUMENT

## 1. THE DISTRICT COURT LACKED JURISDICTION

In denying NeuroRepair's Motion to Remand without prejudice, this Honorable Court instructed the parties to address the matter of jurisdiction in their Briefs on Appeal.  NeuroRepair respectfully does so here.

### A. The Federal Courts Never Had Subject Matter Jurisdiction In This Case.

Defendants removed this action on the sole basis of federal question jurisdiction, asserting that the underlying subject matter involves the prosecution of United States patents, and thus claimed the federal courts had jurisdiction under 28 U.S.C. § 1338(a).  Defendants' Removal is based on the criteria set forth in *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.,* 504 F.3d 1262 (Fed. Cir 2007).  *Air Measurement,* however, has subsequently been overruled by *Gunn v. Minton*, 133 S. Ct. 1059, 1066-1067 (S. Ct. 2013) which held the issue of patent law is not necessarily a substantial element of a malpractice case.

In 2007 the Court of Appeals for the Federal Circuit decided *Air Measurement*, *supra* holding that any case "arising out of patent" pursuant to 28 USC  1338(a), including an action for legal malpractice stemming from a patent prosecution or patent infringement litigation, is necessarily a matter of exclusive

federal jurisdiction.  In its generally well-reasoned Opinion, the Court admirably confined itself to consideration of the statute at issue and gave a clear explanation of the "trial within a trial" (sometimes called "case within a case") method often employed to determine malpractice.  This process attempts to replicate the result that should have obtained absent the alleged attorney malpractice.  It is in this "mini-trial" within the main trial that issues of patent law might arise.  The Court erred, however, in assuming that there would necessarily always be a "mini-trial" or that the trial within the trial would necessarily involve issues of patent law, thereby presenting a federal question, resulting in federal jurisdiction.

Defendants removed the case to the United States District Court in and for the Southern District of California as they seemingly had a right to do under *Air Measurement, supra* on May 7, 2009.  Defendants filed a joint Answer dated May 27, 2009.

On February 20, 2013, the United States Supreme Court announced its Decision in *Gunn v. Minton, supra* in which it pointed out the flaw in *Air Measurement Technologies*, *supra* and effectively overruled that Decision.  The Supreme Court in *Gunn* stated that:

> Because federal law did not create the cause of action asserted by Minton's legal malpractice claim, the claim can "aris[e] under" federal patent law only if it "necessarily raise[s] a stated federal issue, actually disputed and substantial which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."

*Gunn v. Minton*, 133 S.Ct. 1059 at 1061 (Quoting and citing *Grable & Sons Metal*

*Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (S. Ct. 2005))

Relying on *Grable*, the court pointed out that federal jurisdiction over a state

law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed,

(3) substantial, and (4) capable of resolution in federal court without disrupting the

federal-state balance approved by Congress. Applying the *Grable* inquiry in *Gunn*

the court found that *Gunn*'s legal malpractice claim did not arise under federal

patent law stating:

> Indeed, for the reasons we discuss, we are comfortable concluding that state
> legal malpractice claims based on underlying patent matters will rarely, if ever,
> arise under the federal patent law for purposes of §1338(a).

*Gunn v. Minton,* 133 S.Ct. 1059 at 1065

Chief Justice Roberts, writing for the Court, explicated the requirement that

all of the conditions set forth in *Grable* must be met when he wrote:

> The federal courts have exclusive jurisdiction over actual patent
> cases, and in resolving the non-hypothetical patent questions those
> cases present they are of course not bound by state precedents.
> Minton suggests that state courts' answers to hypothetical patent
> questions can sometimes have real-world effect on other patents
> through issue preclusion, but even assuming that is true, such
> "fact-bound and situation-specific" effects are not sufficient to
> establish "arising under" jurisdiction. *Empire Healthchoice*
> *Assurance, Inc. v. McVeigh,* 547 U.S. 677, 701 (2006). Finally, the
> federal courts' greater familiarity with patent law is not enough, by
> itself, to trigger the federal courts' exclusive patent jurisdiction.

> It follows from the foregoing that Minton does not meet *Grable*'s

[see *supra*] fourth requirement, which is concerned with the appropriate federal-state balance.  There is no reason to suppose that Congress meant to bar from state courts state legal malpractice claims simply because they require resolution of a hypothetical patent issue.

*Gunn v. Minton*, 133 S.Ct. at 161-162  (Quoting and citing, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 162, 109 S.Ct. 971 (1988))

It is important to note that no federal question can possibly be raised in this case because no "case within the case" procedure is required.  We **know,** with absolute certainty, what result obtains absent the malpractice and malfeasance of Defendants here.   Subsequent patent counsel obtained, apparently with no difficulty, four issued patents from the exact same applications Defendants were supposedly prosecuting.  ( A1621, 1671-1716)  We need not address the "issue" Defendants have desperately attempted to raise as to whether NeuroRepair's IP is patentable.  The only issues raised in this case are the state claims stated in the Complaint respecting malpractice, breach of fiduciary duty, and fraud.

### B. Plaintiff's Motion to Remand Was Not, and Could Not Be, Moot At The Time It Was Made.

On or about September 27, 2012, in an attempt to afford the District Court an opportunity to rectify its errors of fact and law, Plaintiff filed a Rule 59 Motion to Alter, Amend, or Reconsider with the District Court.  The District Court failed

to rule on this Motion, and merely left it pending, for approximately nine months, thus leaving the case active.  On February 22, 2013, on the basis of the Supreme Court's Decision in *Gunn* v. *Minton, supra* Plaintiff filed a Motion to Remand. The District Court ignored this Motion for four months.  On July 1, 2013, in an apparently hasty, and certainly curious, attempt to conclude the case the District Court issued a single Ruling that Plaintiff's Rule 59 Motion and Plaintiff's Motion to Remand were both denied.

The Court stated that Plaintiff's Motion to Alter, etc., (which it repeatedly misconstrued as having been made *pro se* notwithstanding that a corporation cannot appear *pro se*) was moot because it was signed by Plaintiff's CEO, Matthew Klipstein.  Mr. Klipstein, who remains a member in good standing of the Colorado State Bar, had been a member of the California State Bar from 1979 until 2011, at which time, having decided that he preferred to pursue business ventures, he voluntarily resigned from the California Bar.  Unbeknownst to Mr. Klipstein, the Southern District, where he had long been a member in good standing, has a Local Rule that one cannot practice in the Southern District without being a member of the California Bar.  It was on this basis that the District Court, in a fashion that contradicts itself, stated that Plaintiff's Motion was improper and moot, and that the court could ignore it.  However, the court did not ignore the Motion; rather, it necessarily recognized and considered the Motion in order to

deny it.  The Court denied the Motion to Remand on the ground that a final

judgment had been entered (no final judgment had, in fact, been entered, although

the District Court docket shows the case "closed".)[4.]

C. <u>As a Matter of Law the District Court Lacked Jurisdiction to do</u>
<u>Anything More than Remand the Case to State Court.</u>

The Supreme Court has ruled that a challenge to a federal court's subject-

matter jurisdiction may be made at any stage of the proceedings, and the court

should raise the question *sua sponte*.  *Kontrick* v. *Ryan,* 124 S.Ct. 906 (2003). See

also, *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379 (1884).  The matter of

improper removal where subject matter jurisdiction is lacking cannot be waived or

---

[4] NeuroRepair challenges the validity of the Local Rule in that it serves no readily
apparent purpose aiding in administration of the District Court and unreasonably
discriminates against members of other state Bars, who may generally become
members of, and appear before, any federal court.  See, *Heebe v. Frazier*, 107 S.
Ct. 2607 (1987).

NeuroRepair asserts that the District Court might properly have a local rule
requiring that to be a member of the Bar of the Southern District of California, one
must have passed the California Bar Exam; adopting the California exam as its
own to establish minimum competency to practice before the District Court.
However, if that were the rule, it would not have precluded Mr. Klipstein from
membership in the District Bar; he did take and pass the California Bar Exam and
practiced in California before taking inactive status and, eventually resigning from
the State Bar in order to pursue more interesting business ventures.

But that's not the rule the District has. The rule in question requires one to be a
member of the California Bar. It is difficult to see how the existing rule does
anything to aid in the administration of the court or its cases as required by *Heebe*
v. *Frazier*, supra

ruled untimely raised because it is jurisdictional and not merely procedural. *Lowry v. Alabama Power Co*., 483 F. 3rd 1184 (11th Cir. 2007).

Although the District Court apparently believed it could retain jurisdiction and circumvent the Supreme Court's Decision in *Gunn* by withholding ruling on Plaintiff's pending Motion to Alter, etc. until mere moments before addressing Plaintiff's long-pending Motion to Remand, this belief was both misguided and improper as an apparent attempt to impose a result in the case contrary to the law. Plaintiff's Motion to Remand had been made months before the court's July 1 ruling, and, moreover, no Motion to Remand was required at all. It was the District Court's responsibility to continually ensure that its Removal jurisdiction was proper and to remand immediately upon knowing, or when it should have known, that it did not have proper jurisdiction.  See, *Kondrick* v. *Ryan, supra*; *Stanhope v. Ford Motor Credit Co., Inc*., 483 F.Supp. 275 (W.D. Ark.1980)["Federal district court has independent responsibility to make sure that it does not act without jurisdiction in a case removed to it from state court."]; *Stewart v. Atwood* 834 F.Supp.2d 171, (W.D. N.Y.2012) ["Regardless of whether the issue is raised by the parties, a district court is required to inquire into and determine whether federal subject matter jurisdiction in a removed action exists. . .."]; *Davis v. Mutual of Omaha Ins. Co*., 290 F.Supp. 217 (W.D.Mo.1968)  ["Federal district court must, on its own motion, make appropriate jurisdictional inquiry even though no motion

to remand is filed."];   *International Tin Council v. Amalgamet Inc*., 645 F.Supp.

879 (S.D. N.Y.1986) [If a case is improperly removed because original jurisdiction

was lacking, the case must be remanded to state court from which it was

removed.]; *KCPO Emp. Credit Union v. Mitchell*, 421 F.Supp. 1327

(W.D.Mo.1976) [Case must be remanded as first order of business where state

court has jurisdiction but federal court lacks both original and removal

jurisdiction.]

Simply stated, where federal subject matter jurisdiction is lacking, a federal

court may not act upon the substantive merits of the case; it has no choice but to

remand the improperly removed case back to the state court from whence it came.

No Motion is required and no action by the trial court can alter the jurisdictional

fact.

  D. The Presence or Absence of Federal Question is Governed by the

      Well-Pleaded Complaint Rule

Plaintiff's Complaint, properly filed in the Superior Court of California in and

for the County of San Diego, on March 20, 2009, alleged only state law causes of

action against Defendants for professional negligence, breach of contract, breach

of fiduciary duty, negligent promise, and fraud. Nowhere in the Complaint is there

any allegation raising, or even intimating, a federal question. 28 U.S. Code §1331

clearly states, and innumerable cases have reaffirmed, that the presence or absence

of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists **only when a federal question is presented on face of plaintiff's properly pleaded complaint** [emphasis added]. 28 U.S.C.A. §1331 and 28 U.S.C.A. §1441, and *Caterpillar, Inc.* v. *Williams*, 107 S. Ct. 2425 (1987).

Notwithstanding this well-established and irrefutable rule of law, in their opposition to Plaintiff's Motion to Remand, which has since been denied without prejudice by this Court, Defendants have repeatedly argued that a federal question would have existed in this case because they intended to assert at the District Court that even though NeuroRepair's patent applications were ultimately granted, resulting in four separate U.S. patents, the applications had been initially rejected, and, Defendants now assert, the Patent Office was correct when it originally rejected the applications.

As this Court well knows, most patent applications are rejected at least once before being granted, and it is only the USPTO's final granting of an application that matters. Defendants' argument is creative, but wrong. Moreover, it misses the point entirely. The essential question on this appeal is whether the District Court ever had subject matter jurisdiction. Pursuant to the Supreme Court's ruling in

/ / /

/ / /

*Gunn* v. *Minton* and the well-pleaded Complaint rule, the answer cannot be anything other than "No." Defendants cannot create a federal question by attempting to raise one in a defense.

The jurisdictional issue is dispositive. This Honorable Court is now left with only two options: (1) it may remand the case to the District with instructions to remand to the California Superior Court; or (2) preferably, and more expeditiously, it may remand the case to the state court itself.

**2. <u>THE DISTRICT COURT ERRONEOUSLY DISPOSED OF MOST OF PLAINTIFF-APPELLANT'S CASE BASED ON A MISAPPLICATION OF THE STATUTE OF LIMITATIONS.</u>**

> A. <u>Defendants Have Not Adequately Pled a Statute of Limitations Defense.</u>

Defendants' Answer is a remarkable document. It appears to include virtually every theoretical defense, and some "defenses" never before imagined, in purely conclusory terms. It recites twenty-seven (27!) "affirmative defenses." (A112-113) In not one of them do Defendants allege a single affirmative fact even purporting to support the pleaded defense. This violates Fed.R.Civ.P. 8, which provides, in relevant part:

> (1) *In General*. In responding to a pleading, a party must:

(A) state in short and plain terms its defenses to each claim asserted

against it; and

(B) admit or deny the allegations asserted against it by an opposing

party.

(2) *Denials — Responding to the Substance*.  A denial must fairly respond to

the substance of the allegation.

Fed.R.Civ.P. 8(b)(1) and (2).

In determining whether an affirmative defense is adequately pled, the Court

should be guided by the plausibility standard set forth in *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009).[5]   In

*Twombly,* the Supreme Court explained that to prevail against a motion to dismiss,

a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on

its face."  550 U.S. at 570.  Under this plausibility standard, a complaint need not

---

[5] Although this Court has not yet addressed whether the plausibility standard articulated in *Twombly* and *Iqbal* applies to the pleading of affirmative defenses, NeuroRepair respectfully submits that it must.  As other courts have held, the considerations of fairness, common sense and litigation efficiency underlying *Twombly* and *Iqbal* mandate that the same pleading requirements apply equally to complaints and affirmative defenses.  "[I]t neither makes sense nor is it fair to require a plaintiff to provide the defendant with enough notice that there is a plausible, factual basis for her claim under one pleading standard and then permit a defendant under another pleading standard simply to suggest that some defense may possibly apply in the case." *Palmer v. Oakdale Farms, Inc.*, 2010 WL 2605179, at *4 (W.D. Va.).  *See also CTF Dev., Inc. v. Penta Hospitality,* 2009 WL 3517617, at *7-8 (N.D. Cal.).  This is consistent with the well-established rule that although Fed.R.Civ.P. 8(c) governs the pleading of affirmative defenses, they are subject to the same Rule 8(a) pleading standards that apply to complaints. *See Woodfield* v. *Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).  "Affirmative defenses are pleadings and, therefore, are subject to all pleadings requirements of the Federal Rules of Civil Procedure." *Heller Fin., Inc.* v. *Midwhey Powder Co.*, Inc., 883 F.2d 1286, 1294 (7th Cir. 1989).

contain "detailed factual allegations" but it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.    In *Iqbal,* the Supreme Court further explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct at 1949

As their fourth affirmative defense, defendants assert that "each and every claim or purported claim is barred by all applicable statutes of limitations." (117) Notably plaintiff does not indicate the statute of limitations to which they refer, nor do they allege any specific facts to support the affirmative defense.  In *Whysak v. City Bank*, 607 F.2d 824 (9th Cir. 1979) the 9th Circuit suggested, by its reasoning in that case, that defendants' conclusory allegations that "[p]laintiff's claims, and each of them, are barred by the applicable statutes of limitations' is insufficient. (In *Wyshak* the court held defendants conclusory allegations were sufficient, but only because a memorandum in support of a motion to amend the answer specified a statute.)

Here, Defendants' counsel even admitted in correspondence when Plaintiff's counsel tried to resolve the matter of improper pleading informally, that some of the pleaded affirmative defenses were "placeholders" [which are undeniably improper] in the event that they might later appear relevant.  By way of example:

the First Affirmative Defense states:  "Defendants allege that Plaintiff, by its own acts and/or omissions, is estopped from recovering at all against Defendants." However, there is no explanation of what those "acts and/or omissions" might be, or how they might work to "estop" Plaintiff from recovering in this action.  The Second Affirmative Defense is the same as the first, with the meager distinction that Defendants' unspecified "acts and/or omissions" amount to a "waiver" instead of estoppel of their right to recover.  Likewise, in the Fourth Affirmative Defense defendants states that "said complaint, and each and every claim or purported claim contained therein, is barred by the applicable statute of limitations." However, Defendants fail to identify which statutes of limitations might be "applicable," to which claims such statutes might apply, what time has passed, or on what dates the statutes might have begun to run or expired.    The Sixth Affirmative Defense states that the complaint "is barred by the doctrines of res judicata and/or collateral estoppel," without providing even a hint of what prior action might give rise to such defenses or how these doctrines might apply here. Further defendants allege that "as an eighth and separate affirmative defense, Defendants allege that Plaintiff has not yet incurred damages or loss with respect to this action. The Complaint is therefore not ripe for adjudication."    This is a particularly fascinating defense.  If Plaintiff has not yet incurred damages, then the only arguably applicable statute of limitations is tolled [See Cal. Civ. Pro.

§340.6(a)(1) discussed *infra]*.  Finally, defendants allege "as a twenty-fourth and separate affirmative defense, Defendants allege that this action cannot proceed because Plaintiff has failed to join one or more indispensable parties."  Defendants do not, however, suggest who the "indispensable parties" might be.

Pleadings such has these are routinely stricken.  For example, in *Shechter* v. *Comptroller Of City Of New York*, 79 F.3d 265 (2nd Cir. 1996), the Court criticized "bald assertion" affirmative defenses – such as the ones alleged in Defendants' Answer here – as being improperly pleaded:

> Affirmative '[d]efenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts **have no efficacy**.'  *Id.* at 270 (emphasis added).

*See also Woodfield* v. *Nationwide Mutual Ins. Co.*, 193 F.3d 354, 362 (5th Cir. 1999) (baldly "naming" the broad affirmative defense of "waiver and/or release" falls well short of the minimum particulars needed to identify the affirmative defense and provide "fair notice"); *Ariosta* v. *Fallbrook Union High School Dist.*, 2009 WL 1604569, at *8 (S.D. Cal.)  (striking several affirmative defenses, including one based on the statute of limitations because it was based on an unspecified statute and did not identify the causes of action allegedly barred by the statute); *Servpro Industries, Inc. v. Schmidt*, 905 F. Supp. 475, 482 (N.D. Ill. 1995) (striking affirmative defenses that "provide no information other than the name of the legal theory on which each affirmative defense is based (*e.g.*, waiver, estoppel,

illegality)"). Thus, no statute of limitations defense was ever properly pleaded, and surely should not have been employed by the court below to eviscerate Plaintiff's Complaint.

> B. The One-Year Statute of Limitations Does Not Apply to All of NeuroRepair's Claims.

The statute of limitations erroneously applied by the District Court was California Code of Civil Procedure § 340.6 which states:

(a) An action against an attorney for a wrongful act or omission, **other than for actual fraud,** arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. If the plaintiff is required to establish his or her factual innocence for an underlying criminal charge as an element of his or her claim, the action shall be commenced within two years after the plaintiff achieves post-conviction exoneration in the form of a final judicial disposition of the criminal case. Except for a claim for which the plaintiff is required to establish his or her factual innocence, in no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

   (1) The plaintiff has not sustained actual injury.

   (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.

/ / /

/ / /

(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.

(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

(b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of that act or event.

[Emphasis Added]

This statute expressly excludes fraud from its application. California Code of Civil Procedure § 340.6 states in pertinent part that it is applicable to "wrongful act or omission, other than for actual fraud." In the case at Bar, Plaintiff alleged actual fraud, yet the court below ignored either the pleadings or the fraud provision of the statute and dismissed the case on the erroneous ruling that this action had not been brought within one year of Defendants' wrongful acts. NeuroRepair's Seventh Cause of Action alleged actual affirmative misrepresentation that induced it to enter into the attorney-client relationship and actual affirmative misrepresentations that induced it to remain in such relationship. (A57-68) These misrepresentations constitute "actual fraud." Moreover, the facts have conclusively demonstrated that Defendants intentionally concealed material facts from NeuroRepair that, if disclosed would have caused NeuroRepair to end its professional relationship with Defendants sooner than it did.

For example, Defendants own internal documents reveal that Defendants, including Gary Nath (the firm's founder and managing partner) and Ross Epstein (the managing partner of the San Diego Office where defendant Cogan practiced were aware of Cogan's incompetence in general and in particular his mishandling of NeuroRepair's patent applications and gross overbilling of NeuroRepair (A4336). No one from Nath informed NeuroRepair of these problems as required by California Rules of Professional Conduct §3-500, and to the contrary, Defendants deliberately concealed these facts from NeuroRepair. There is no question that this type of intentional concealment is 'actual fraud" and is excluded from the scope of CCP §340.6. (see e.g. *Charnay v. Cobert* 145 Cal.App.4[th] 1708, 52 Cal.Rptr.3d 712 (2006).

The cause of action for breach of fiduciary duty is clearly a claim for actual fraud. Defendants' intentional failure to disclose a material fact **is actionable fraud** since there was a fiduciary relationship giving rise to a duty to disclose it." *Black v. Shearson, Hammill & Co.,* 266 Cal.App.2d 362, 367, 72 Cal.Rptr 157 (1968).

California Rule of Professional Conduct 3-110. "Failing to Act Competently," provides.

A member shall not intentionally, recklessly, or repeatedly fail to perform legal services with competence.

/ / /

California Rule of Professional Conduct 3-500 provides:

> A member shall keep a client reasonably informed about significant developments relating to the employment or representation, including promptly complying with reasonable requests for information and copies of significant documents when necessary to keep the client so informed.

Further, California law holds that "an intentional failure to disclose a material fact **is actionable fraud** if there is a fiduciary relationship giving rise to a duty to disclose it."  See, *Black v. Shearson, Hammill & Co., supra* at 367 (1968) [emphasis added].  California Rule of Professional Conduct 3-500 specifically mandates such a duty from a lawyer to his or her client.  Every member of the Nath law firm who was aware of Cogan's mis- and malfeasance is therefore liable for fraud.  Ross Epstein, Cogan's "Managing Partner," wrote an email to Cogan stating:

> You must, and I mean MUST, let him [Matthew Klipstein] know that you cannot work any more on this matter and that Sue [Susanne Hopkins] will be taking over with your MINIMUM support.  Enough is enough.  This handoff should have happened months ago.  I do not understand why it still has not.  If it doesn't happen this week, I will be forced to contact Matthew myself.

(A4340)  [Emphasis is original]

Neither Epstein nor Gary Nath, nor anyone at the Nath firm ever advised anyone at NeuroRepair of their concerns about Cogan's poor work (or

/ / /

/ / /

deliberate failure to obtain NeuroRepair's patents), or Cogan's overbilling. Under California law, this is actionable fraud. See *Black* v. *Shearson, supra.*

Under the Uniform Partnership Act, as codified in the Cal. Corp. Code Sections 16100 *et seq*. every member of the Nath law firm who was held out as a "Partner" is a partner in fact and is jointly and severally liable to third parties who reasonably believed such persons to be partners for the torts of any other such "Partner." The Uniform Partnership Act, as enacted in California in Corporations Code [Sections 1600 et seq.] states:

> When, a person, by words or conduct, purports to be a partner of one or more persons who are not partners. In such a case, the purported partner is liable to a person who, relying on the representation enters into a transaction with the purported partnership.

Under the UPA, liability of a partnership may be premised on an actual partnership pursuant to California Corporations Code § 16202, or partnership by estoppel pursuant to California Corporations Code §16308(a). Here, Gary Nath, Ross Epstein, Robert Cogan, and several other Nath lawyers all represented to NeuroRepair that they were "partners." Therefore, under California law, they were.

Once partnership is established, California Corporations Code §16308(a) provides that unless otherwise agreed by the claimant or provided by law, all

partners are jointly and severally liable for all partnership obligations. See, California Corporations Code § 16308(a).

At the Hearing of Defendants' Motion in Limine to exclude certain evidence, the District Court asked a salient and significant question. The Court asked Defendants' counsel, Heather Rosing (but never gave Plaintiff's counsel an opportunity to respond or offer a different opinion), to explain Defendants' position as to whether the Rules of Professional Conduct have evidentiary bearing on the issue of an attorney defendant's malpractice. Ms. Rosing represented to the court that California's Rules of Professional Conduct are employed for disciplinary purposes only and may not be used as evidence of malpractice. Ms. Rosing stated:

> I PRIMARILY DEFEND LEGAL MALPRACTICE CASES, SO THIS COMES UP VERY FREQUENTLY. SO THEY [The Rules of Professional Conduct] ARE NOT INTENDED FOR CIVIL LIABILITY PURPOSES, THEY ARE INTENDED FOR DISCIPLINARY PURPOSES; AND, THEREFORE, THERE IS A GOOD ARGUMENT THAT THEY ARE INADMISSIBLE IN THE COURSE OF ANY PROCEEDING OF THIS NATURE, ANY LEGAL MALPRACTICE IN STATE OR FEDERAL COURT. [All caps in original transcript] (A7128-7129)

This is manifestly incorrect. One may parse Ms. Rosing's language such that she was merely wrong and did not deliberately lie to the Court. However, (a) this is fundamental law a District Court should know without asking, and (b) having asked Defendants' counsel for their view, basic fairness dictates that the Judge should at least have given NeuroRepair's counsel an opportunity to respond. The

correct rule has been clearly stated in the Southern District of California. In *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP, supra*, Chief Judge Irma Gonzalez ruled in *Vaxiion* that "Under California law breach of fiduciary duty is a 'species of tort distinct from a cause of action for professional negligence." Thus, logically, as Plaintiff has consistently argued, the one year limitation in CCP 340.6, which, by its terms, is specifically limited to professional negligence [mistake], cannot be employed to dismiss causes of action for Breach of Fiduciary Duty, which most states, including California, treat as a type of fraud. For this proposition Judge Gonzalez cited and quoted from precisely the same case cited to the District Court by Plaintiff: *Stanley v. Richmond,* 35 Cal.App.4th 1070, 1077, 41 Cal.Rptr.2d 768 (Cal. Ct. App. 1995). However, the District Court in the instant case summarily rejected this argument every time it was raised by Plaintiff. In the simplest statement of her well-reasoned Opinion Judge Gonzalez wrote, as Plaintiff has repeatedly argued, that the scope of an attorney's duty of care to a client is based upon the California Rules of Professional Conduct. *Stanley, supra*, at 1086.

Further, in the published *Vaxiion* Opinion Judge Gonzalez reiterated the rule argued by NeuroRepair and rejected by the Court in this case, that "It is well established that an attorney's duties to his client are governed by the Rules of

/ / /

/ / /

45

Professional Conduct," citing *American Airlines, Inc. v. Sheppard Mullin, Richter & Hampton,* 96 Cal.App.4th 1017, 1032, 117 Cal.Rptr.2d 685 (Cal. Ct. App. 2002).

Contrary to the representations of Defendants' counsel, violations of Rules of Professional Conduct **are**, evidence, and may even be conclusive evidence, of legal malpractice in California. Cogan, Nath, Epstein, and others were obligated under the California Rules of Professional Conduct, but failed, to disclose to Plaintiff their knowledge of certain facts and events, among which was that Defendant Cogan was doing an especially poor job on Plaintiff's patent application prosecutions, and, moreover, that Cogan had a financial incentive to deliberately sabotage Plaintiff's Patent Applications so as to keep Plaintiff as a paying client.

Robert Cogan repeatedly lied to Plaintiff's CEO, Matthew Klipstein. Cogan lied about what he was doing and what was being accomplished respecting the patents Plaintiff had engaged the Nath law firm to obtain. Cogan lied about the credentials of Susanne Hopkins, repeatedly assuring Klipstein that Hopkins was a "life sciences PhD, and further lied about whether members of the Nath firm, including Hopkins, were assisting him with NeuroRepair's patent application prosecutions, all in violation of the Rules of Professional Conduct. Gary Nath, Ross Epstein, and other members of the Nath firm were aware of Cogan's misrepresentations to Plaintiff, but took no action to advise NeuroRepair of

(indeed, they conspired with Cogan to conceal from NeuroRepair) Cogan's malfeasance, all in violation of Cal. Rule Prof. Conduct 3-500.

Since "an intentional failure to disclose a material fact is actionable fraud if there is a fiduciary relationship giving rise to a duty to disclose it." *Black v. Shearson, Hammill & Co., supra* [California Rule of Professional Conduct 3-500 does, clearly and specifically mandate such a duty], as a matter of law, the one year statute of limitations set forth in CCP 340.6 employed by the District Court to dismiss NeuroRepair's causes of action for Breach of Fiduciary Duty cannot apply.

C. <u>The Statute of Limitations Was Subject to Equitable Tolling in that NeuroRepair Did Not Know or Have Reason to Know of Defendants' Wrongful Conduct More Than One Year Prior to the Filing of the Complaint.</u>

The statute of limitations for the breach of fiduciary duty claim, at a minimum, did not begin to run on August 2007 as claimed by Defendants. (A2284) NeuroRepair's breach of fiduciary claim is based on the undisputed fact that, contrary to Cal. Rules of Prof. Conduct 3-110 and 3-500 and an attorney's duty not to put its own financial interest above his client's interest, Defendants failed to disclose to NeuroRepair the Nath Firm's own internal investigation of Cogan and the conclusion of the partners that Cogan had mishandled the patent applications and overbilled NeuroRepair. (A4649-4650, 4662) Due to the self-

concealing nature of this misconduct, NeuroRepair was not and could not have been aware of the specific facts supporting this cause of action until Defendants produced documents demonstrating Defendants' knowledge of and concerns regarding Cogan's conduct on or about February 19, 2010.  (A4649-4650, 4662)

It is not sufficient that the client have knowledge of a fact in the abstract.  He must know or suspect or have reason to know or suspect that the attorney has engaged in wrongful conduct.   As the California Supreme Court explained in *Gutierrez v. Mofid*, 39 Cal.3d 892, 41 Cal.Rptr.2d 768 (Cal. 1985), a claim for professional negligence accrues "if one has suffered appreciable harm and knows or suspects that professional blundering is its case."   *Id*, at 898).   Thus, a client must have actual or constructive knowledge that the attorney engaged in wrongful conduct, and that the wrongful conduct caused the client harm.  See *McCann v. Welden*, 153 Cal.App.3d 814, 82, 200 Cal.Rptr. 703 (Cal. Ct. App. 1984)

This Court has dealt with this issue before.   In *Landmark Screens, LLC,* v. *Morgan, Lewis, & Boclius, LLP, and Thomas Kohler*, 676 F.3d 1354 (Fed. Cir. 2012) a legal malpractice case arising out of patent prosecution was brought. *Landmark Screens* was initially heard and decided in the United States District Court for the Northern District of California, and so, as here, employed California state law.  Further, as here, the District Court had dismissed many of Plaintiff's claims, including claims for Breach of Fiduciary Duty, on the ground that they

were foreclosed by the one year statute of limitations contained in Cal. Civ. Pro. §340.6. Additionally, as here, the Northern District summarily excluded Plaintiff's expert testimony respecting damages ignoring the Supreme Court's guidance in *Daubert, supra*).

In *Landmark* the Court of Appeals for the Federal Circuit reversed both of these portions of the District Court's Decision, ruling respecting to the statute of limitations that California law "favors avoiding forfeitures [by statutes of limitations] and allowing good faith litigants their day in court." Citing, *Addison* v. *State*, 21 Cal.3d 313, 146 Cal.Rptr 224 (Cal. 1978), and holding that the District Court should have employed equitable tolling in order to avoid dismissing claims on the basis of a statute of limitations. Similarly, in the case at Bar, Plaintiff argued vigorously for equitable tolling on the grounds of "discovery" and "continuous representation." Both of these contentions favoring tolling are based upon uncontroverted evidence presented by Plaintiff to the court below, but the arguments were peremptorily rebuffed by the District Judge.

D. <u>Defendants Continuing Representation Tolled the Statute of Limitations</u>

Regardless of whether any of NeuroRepair's claims may be governed by CCP §340.6, the undisputed facts clearly demonstrate that the statute of limitations was tolled until at least July 2008 because of Defendants' continuing

representation of NeuroRepair. Therefore, NeuroRepair's Complaint (filed on March 20, 2009, well within one year of July 2008) was timely filed.

CCP 340.6(a)(2) provides that the statute of limitations "shall be tolled during the time that any of the following exist: . . . (2) the attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." Even if the client is aware of the attorney's negligence, continuing representation tolls the one year limitations period. *O'Neill v Tichy*, 109 Cal.App.4th 114, 120-121, 134 Cal.Rptr.2d 467 (1993) Further continuous representation is judged objectively from the client's perspective. *Nielsen v. Beck*, 157 Cal.App.4th 1041, 1049-50, 69 Cal.Rptr.3d 435 (2007) Contrary to the District Court's finding that NeuroRepair had dismissed Defendants as counsel more than a year before the action was brought, the evidence clearly shows that NeuroRepair never fired Defendants.[6] In point of fact, Mr. Klipstein merely insisted that Cogan honor his oft-repeated promise to turn the patent prosecutions over to a qualified patent lawyer expert in life sciences and that another attorney appear at the PTO (where Cogan had had no success) on NeuroRepair's behalf. Cogan and Klipstein agreed that Cogan would continue to work on NeuroRepair matters in other capacities.

---

[6] As a result of an inadvertent error by counsel, the Complaint alleges that NeuroRepair dismissed Defendants as counsel in August, 2007. As the evidence shows, this allegation was mistaken. NeuroRepair NEVER dismissed Defendants, but rather only demanded that Cogan be replaced as lead counsel.

Klipstein, in his deposition, (A4760-4765) and Cogan in his email to Klipstein submitted to the District Court, both make clear their mutual understanding that Cogan was to remain a part of the patent prosecution team, but was to be replaced by another Nath lawyer, or a lawyer from another firm, as lead counsel, as Cogan had many times previously promised to do.

In an August, 2007 email, Cogan stated:

> I want your concurrence in our proceeding on the patent application with the life sciences specialist as 'first chair' instead of me regarding patent prosecution.  (A5116)[7]

Cogan's requesting Klipstein's "concurrence" was mere face-saving.  Klipstein had repeatedly requested this change.  This email from Cogan clearly demonstrating that he understood he was continuing as part of Plaintiff's patent prosecution team was months after the date on which the Court concluded Klipstein had fired Cogan.  Cogan was never fired.  Even if he had been, that would have been a far different thing from firing the Nath law firm, and no one has even suggested that that occurred.  The individual lawyer is irrelevant.  It was the law firm that was retained to represent Plaintiff.

/ / /

/ / /

/ / /

---

[7] While the actual e-mail appears to be omitted from the court's document, such e-mail is clearly referred to in Plaintiff's Exhibit list as their Bates Stamped Document NC000342-NC000343

3. **THE DISTRICT COURT ERRONEOUSLY HELD THAT NEUROREPAIR DID NOT HAVE STANDING**

    A. The Defendants Are Estopped from Claiming Plaintiff Lacks Standing.

Having misconstrued and misapplied a statute of limitations that was never pled to dismiss much of NeuroRepair's suit; and having thrown out virtually all of NeuroRepair's expert testimony without so much as passing reference to the requirements of *Daubert*; and having dismissed without explanation NeuroRepair's causes of action for Breach of Fiduciary Duty; the District Judge administered an inexplicable coup de gras by, without even suggesting a justification for the ruling, holding that NeuroRepair lacked standing to bring its case at all.

This decision is so manifestly wrong that the very notion of it seems incomprehensible. The lower court's decision might only be justified by findings that are clearly contrary to the Record.

"No procedural principle is more familiar to this Court than a right may be forfeited in a criminal as well as civil case by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (Honorable Justice Scalia) *Puckett v United States*, 556 U.S. 129, 134 (1992). The concept of estoppel refers to a pattern of conduct. First articulated in the courts of equity, estoppel has come to pervade our law. When invoked, the Court closes its ears to a

point - a fact, an argument, a claim, or defense on the grounds that to permit its

assertion would be intolerably unfair.    Commonly it is said that the party to be

estopped having conducting itself in manner "X" will not be heard to assert "Y"

later. *City of Hollister v Monterey Insurance Company* 165 Cal. App. 4th 455, 486;

81 Cal.Rptr.3d 72 (Cal. Ct. App. 2008); *Nogart v Upjohn Company* 21 Cal. 4th

383, 411, 87 Cal.Rptr.2d 453 (Cal 1999).    Estoppel arises from prior conduct of a

litigant that is at odds with a point now asserted in this same litigation. The

conduct operates to cast a pall of unfairness over the inconsistent position being

asserted.    The unfairness of the conflicting assertions affects a forfeiture similar to

the doctrine of waiver.    However, where a waiver is a voluntary relinquishment of

a right an estoppel may arise involuntarily and may result in the loss of rights the

actor did not know he or she possessed. City of *Hollister, supra* at 486 - 488;

*Oakland Raiders v Oakland-Alameda County Coliseum, Inc*. 144 Cal. App. 4th

1175, 1189-1190, 51 Cal.Rptr.3d 144 (Cal. Ct. App. 2006)  The elements of the

estoppel are: one, the party to be estopped has engaged in inequitable conduct; two,

that conduct has caused or induced the other party to suffer some disadvantage,

and three, equitable considerations warrant the conclusion that the first party

should not be permitted to exploit the disadvantage they inflicted on the second

party. *Id*. at 488.    Most notable an estoppel will be held to occur when to hold

otherwise would permit a party to trifle with the court system.    *Mount Holyoke*

*Homes LP v California Coastal Commission*, 167 Cal. App. 4th 830, 842, 84 Cal.Rptr.3d 452 (Cal. Ct. App. 2008); *In Re: Griffen*, 67 Cal. 2nd 343, 347-348, 62 Cal.Rptr.1 (Cal 1967)

In the present case, the record of this proceeding substantially weighs in favor of this Court estopping defendants from taking the position plaintiff does not have standing to proceed in this litigation. The defendants' actions in this litigation over an extended period of time constitute acquiescence, or in the alternative defendants certainly are inviting this procedural error. The defendants cannot be allowed to hide in wait for three years, aggressively prosecute the defense, aggressively participate in discovery and bring dispositive motions treating this named plaintiff as the proper party and now invoke standing and claim it did not consented to the Delaware Corporation prosecuting this case. Estoppel will be applied particularly in cases where significant resources have been expended over a period of time where if estoppel is not applied such resources and expenses would go for naught. *Mount Holyoke Homes LP v California Coastal Commission, supra* 167 Cal. App. 4th at 842.

Defendants admit they were on notice from day one of this litigation that the plaintiff prosecuting this case was a Delaware Corporation. (A7178-7179, 7193-7194) Defendants did nothing. Mr. Cogan was involved in the dissolution of the California corporation and its reorganization Delaware corproation. (A7178-7179,

7193-7194.)    He had knowledge and was intimately involved in the transition. (A7178-7189, 7183-7184)    The defendants continued to represent the Delaware Corporation in the patent application and continued to bill the Delaware Corporation for the work it allegedly produced. (A7167-7176, 4749-4766, 4340, 4342-4344, 4345-4348, 4349-4350, 4351, 4352-4376)    The defendants litigated this case for approximately three years recognizing the Delaware entity as the proper plaintiff. The defendants have conducted discovery recognizing the Delaware entity as the proper party in interest.  These defendants filed extensive motions including a Motion for Summary Judgment against the Delaware entity as the proper party in interest. (A2279-2916)   Throughout the course of this litigation these defendants treated the plaintiff as the proper party in interest.

Significantly, the Nath Law Group and Robert Cogan billed during the period of corporate transition in May of 2007 for an assignment.    (A4351) Defendant Cogan, by his billing and other actions, affirmatively represented that he was participating in the orderly transfer of rights in the patents to the Delaware entity.  As far as the plaintiff was concerned an assignment of rights in the patents was perfected because Mr. Cogan represented he did it and he billed for it. Defendants having represented such, must be stopped from claiming that plaintiff-lacks standing.

/ / /

Even ignoring the obvious unity of identity of the California and Delaware Corporations and the Defendants' concession in treating the two corporations as one, the court below could only justify its ruling if it had found that Defendants only committed actionable torts and breaches of contract and duty before May 2007, and never committed any act for which they might properly be sued after NeuroRepair became a Delaware corporation, so as to conclude that only the original California corporation was harmed.  The District Court made no such finding (at least not on the Record). Clearly, the District Court could not have found that Defendants never harmed the Delaware corporation.  Ross Epstein's shocking email to Cogan and Gary Nath (A4336) gave rise to the violation of the Rules of Professional Conduct and resulting Breach of Fiduciary Duty well after NeuroRepair had been reincorporated in Delaware.  Beyond argument, NeuroRepair, Inc., the Delaware Corporation, and the named Plaintiff in the Complaint initiating this action, was directly injured by the malfeasance of Defendants. Finally, even if all of the requisite, but non-existent, facts had been found, the proper ruling in the interest of justice would have been to dismiss the action without prejudice to bring a shareholders' derivative suit, which would have survived as a matter of law.

/ / /

/ / /

## 4. THE DISTRICT COURT ERRED IN ITS RULING EXCLUDING EVIDENCE OF PLAINTIFF'S LOST-LICENSING DAMAGES CAUSED BY DEFENDANTS' DELAY

Without the District Court allowing foundational testimony to be presented at trial, the Court summarily adjudicated in a motion in limine that delay damages in the form of lost licensing opportunities would not be permitted at trial. (A30-33)  The Court apparently disregarded the evidence submitted by Plaintiff in opposition to the motion, which clearly met the initial burden for admission of opinion testimony with respect to delay damages, and the particular element of delay damage classified as lost-licensing opportunity as required under Federal rule of Evidence.  Rather the court summarily concluded, without support that the claimed damages were "speculative," "remote" and "uncertain."

Delay damages in the form of lost-licensing opportunities are not speculative.  With respect to fraud causes of action, a Plaintiff may recover those damages, which he or she has sustained by reason of having been put in a position worse than he, or she would have occupied had there been no fraud.  *R.D. Reeder Leaving Company, Inc. v. Cypress Insurance Company* 3 Cal.App.3d 995, 999, 84 Cal.Rptr. 98 (Cal. Ct. App. 1970).  In opposition to Defendants' Motion in Limine, Plaintiff provided the court with evidence that damages flowed from the delay caused by Defendants' fraud.  (A6706-6707, 6709-6711, 6244-6248, 6315-6351,

and 6405-6428.) Plaintiff provided the court with evidence that plaintiff lost the ability to license the technology throughout its various phases of development. Plaintiff further provided the court with evidence that the issuance of a patent would in and of itself have value for the intellectual property to support a license. In addition, the court was provided with evidence that there is a distinction between drug products and drug candidates. Both candidates and the final product are valued in the biopharmaceutical industry. Both stages are subject to licensing by the industry. Plaintiff's experts provided declarations in opposition to defendants' motion and stated that biotechnical and pharmaceutical industry participants that license drug candidates have a marked preference for technology protected by issued patents as opposed to patent applications. (A6706-6707, 6709-6711, 6244-6248, 6315-6361, and 6405-6428.) Accordingly, Defendants, by their delay, deprived NeuroRepair of the ability to market a product with an "issued patent." By their deliberate delay, Defendants first deprived NeuroRepair of having any patent at all, and then, when subsequent counsel obtained the patents in short order, little time of the patent protection remained. Obviously, the greater the remaining legal life associated with the patent, the more attractive the patent is from a licensing standpoint. With early stage drug candidates, a shorter patent life can limit or potentially destroy a patent owner's ability to obtain meaningful value through licensing because of the time required to develop a drug from the original

research and time to obtain FDA approval of a developed drug. The depositions of expert Dr. James Fallon, Supplemental Expert Report of Daniel Burns and Expert Report of Casey Lynch all support the position that the delay in prosecuting and obtaining the patents caused Plaintiff to be unable to find a potential partner or funding. The experts support the conclusion that the delay in obtaining the patent caused a loss during the phased development.

The multi-level valuation of a license opportunity with respect to the phases of clinical development of drug candidates was explored at the deposition of Plaintiff's damage expert, Daniel Burns. With respect to damages resulting from the delay in issuance of the patents, the value of the technology increases as drug development progress. The delay in the issuance of the patents results in a definite and certain decrease in the value of the technology as phases progress.

It is the Federal Rules of Evidence, which should control whether a Plaintiff may proffer evidence of opinion testimony with regard to delay damages and lost-licensing opportunity. Federal Rule of Evidence 703. The rule provides that an expert may base an opinion on facts or data in a case that the expert has been made aware of or personally observed. The role of the trial judge is to ensure that the testimony is reliable. *Kumho Tire co., Ltd. v. Carmichael* 119 S.Ct. 1167 (1999) citing *Daubert, supra*, the District Court, by its order apparently failed to even consider the expert declarations submitted in support of Plaintiff's opposition and

failed to apply the required criteria under *Daubert* and *Kumho*.  The element of delay damage reflected by the lost-licensing opportunity is admissible, it is not speculative and an adequate basis was provided at the District Court level that a valuable licensing opportunity was certain.  Before a patent is granted, the IP has limited value.  If a patent is granted too long after filing of the application, not enough time of protection remains and the value is, again, limited.

### 3.  CONCLUSION

This Appeal raises a number of errors committed by the District Court below.  Appellant NeuroRepair asserts that one issue, however, is dispositive of the entire appeal – the issue of jurisdiction.  NeuroRepair's causes of action in the complaint do not arise under and are not created by Federal Patent Law.  Neither do NeuroRepair's causes of action require determination of a substantial question of patent law.  Accordingly, Plaintiff respectfully requests that this matter be remanded to State Court with an order that all prior rulings, judgments, and orders rendered in the U.S. District Court are vacated.  Should the court reach the other issues raised by this Appeal, the consistently erroneous rulings by the District Court warrant reversal.

/ / /

/ / /

/ / /

/ / /

June 19, 2014                          Respectfully Submitted,

                                       NEUROREPAIR, INC.,

                                       /s/ Matthew Klipstein, Esq.
                                       Matthew Klipstein, Esq.
                                       1333 14th. St. #2230
                                       Denver, CO 80202
                                       Phone: (888) 407-1575
                                       matthew.k@neurorepair.com

ADDENDUM

# TABLE OF CONTENTS - ADDENDUM

**ORDER GRANTING DEFENDANTS MOTION
AND DISMISSING CASE**……………………………………………………………A1

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT IN PART, DENYING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT IN PART, AND DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**…………………………..A3

**ORDER DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION**………………………………………………………..…..A26

**ORDER FOLLOWING HEARING GRANTING DEFENDANTS'
IN LIMINE MOTION TO EXCLUDE/PRECLUDE EVIDENCE
OF PLAINTIFF'S LOST-LICENSING OPPORTUNITY DAMAGES
AT TRIAL**……………………………………………………………………………A30

**ORDER DENYING PLAINTIFF'S PRO SE MOTION FOR
RECONSIDERATION AND TO ALTER OR AMEND JUDGMENT
[Doc No. 164] AND DENYING AS MOOT DEFENDANTS' MOTION
FOR REMAND** …………………………………………………………………….. A34

**ORDER TAXING COSTS**  ……………………………………………………A36

1

2

3

4

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   NEUROREPAIR, INC., | Case No.     09 CV 986 JAH WMC |
| 12            Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION AND DISMISSING CASE** |
| 13       v. | |
| 14   THE NATH LAW GROUP, a | |
| 15   Professional Limited Liability Corporation, ROBERT P. COGAN, an individual, and DOES 1-20, | |
| 16 | |
| 17        Defendants. | |

18        TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

19        PLEASE TAKE NOTICE that on September 17, 2012, the Honorable John A.

20 Houston heard and granted Defendants The Nath Law Group and Robert P. Cogan's

21 Motion in Limine #2: Plaintiff Lacks Standing. The Court found the following:

22        1.       The only plaintiff in the case, Delaware corporation Neurorepair, Inc.

23                   ("Neurorepair Delaware"), lacks standing to prosecute the remaining cause

24                   of action for fraud/false promise.

25        2.       Neurorepair Delaware presented no evidence of any written assignment of a

26                   fraud cause of action (or any causes of action) from non-party California

27                   corporation Neurorepair, Inc. ("Neurorepair California") to it.

28 ///

**ORDER**
A1

3.  The allegations in the remaining cause of action for fraud/false promise pertain to the time period the attorney-client relationship was formed in late 2005, over a year before Neurorepair Delaware was formed in 2007.

4.  The evidence presented showed that within two weeks of the alleged assignment of patent rights from Neurorepair California to Neurorepair Delaware, Matthew Klipstein, and thereby Neurorepair Delaware, had knowledge of Defendants' alleged lack of educational qualifications and expertise as alleged in the fraud-false promise cause of action.  As such, the Court finds that Plaintiff Neurorepair Delaware could not have reasonably relied on any alleged false promise regarding such educational qualifications or expertise by Defendants at such time.

5.  There is no allegation if continuing fraud (*see*, Complaint, para. 49, 56), nor could there be based on the preceding findings.

Based on the above, the Court grants Defendants' Motion in Limine No. 2, which disposes of the case in its entirety.  All pending motions are denied as moot and the trial date of November 26, 2012 is vacated.  The Clerk of Court is directed to enter judgment in favor of Defendants.

IT IS SO ORDERED.

DATED:  September 26, 2012

_____
JOHN A. HOUSTON
United States District Judge

1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10   NEUROREPAIR, INC.                    )    Civil No. 09CV0986 JAH (WMC)
                                          )
11                     Plaintiff,         )    **ORDER GRANTING DEFENDANTS'**
     v.                                   )    **MOTION FOR SUMMARY**
12                                        )    **JUDGMENT IN PART, DENYING**
     THE NATH LAW GROUP, *et al*          )    **DEFENDANTS' MOTION FOR**
13                                        )    **SUMMARY JUDGMENT IN PART,**
                       Defendants.        )    **AND DENYING PLAINTIFF'S**
14   _____         )    **MOTION FOR PARTIAL SUMMARY**
                                               **JUDGMENT**
15

16

17

18                             **INTRODUCTION**

19

20        Plaintiff filed a lawsuit in San Diego Superior Court on March 20, 2009 asserting the following

21   causes of action: 1) Professional Negligence; 2) Breach of Fiduciary Duty; 3) Breach of Written

22   Contract; 4) Breach of Oral Contract; 5) Breach of Implied Covenant of Good Faith and Fair Dealing;

23   6) Negligent Misrepresentation; and 7) False Promise.  Defendants removed the action to this Court

24   on May 7, 2009.

25        According to the Complaint, on or about December 8, 2005, defendant Nath Law Group

26   entered into an agreement with plaintiff whereby Nath Law Group would provide legal advice and

27   representation to Neurorepair "specifically in connection with the prosecution of the Patent

28   Applications." Compl ¶13.  The Complaint further alleges defendants "never provided to Neurorepair

the services promised and/or did not substantially involve an attorney with requisite training and expertise in neuroscience, or any attorney versed in the subject matter of the Patent Applications."[1] Id. ¶14. The Complaint also alleges defendants "failed to respond to Neurorepair's reasonable requests for information and legal advice" and "improperly billed and/or overbilled Neurorepair for a significant amount of legal fees and costs, which Neurorepair paid." Id. ¶16, 18. Plaintiff claims defendants' wrongdoing harmed plaintiff by "hindering its ability to pursue the Patent applications in a timely and effective manner, and hindering its ability to obtain patents of the same scope it would have obtained but for Defendants' delay and mishandling." Id. ¶21. The Complaint also states that on or about August 22, 2007, plaintiff terminated its agreement with defendants. Id. ¶22.

Plaintiff filed a Motion for Partial Summary Judgment seeking judgment in its favor on the issue of liability for the professional negligence and breach of fiduciary duty claims. Defendants filed an opposition and plaintiff filed a Reply. Defendants also filed a motion for summary judgment on the ground that that all of plaintiff's claims are barred by the applicable statute of limitations, or, in the alternative, on the ground that plaintiff is unable to prove the essential element of causation for any of its claims. Plaintiff filed an opposition and defendants filed a reply. Both parties also filed requests for judicial notice and evidentiary objections to the opposing party's motion. The Court held oral argument on both motions on May 23, 2011.

## FACTUAL SUMMARY

The pertinent facts relating to the instant motions are as follows: In December, 2005, Neurorepair retained defendants to provide representation with respect to the Fallon patent applications. Early the following year, defendant Robert Cogan, the primary attorney assigned to plaintiff's case, drafted an agreement that transferred the intellectual property rights underlying the Fallon patent applications from UC Irvine to Neurorepair. Subsequently, Cogan unsuccessfully

---

[1]The scientific research underlying the Patent Applications relates to a protein, Transforming Growth Factor-alpha ("TGF-a") that has certain regenerative effects when administered to an injured brain. Dr. James H. Fallon discovered this protein through his academic research at the University of California, Irvine, School of Medicine ("UC Irvine"). See Doc. 52-1¶ 4-5 (Klipstein Decl.). Hereafter, the court will refer to these patents as the "Fallon patent applications."

2

09CV0986 JAH (WMC)

A4

attempted to obtain patents for that intellectual property with the United States Patent and Trademark Office ("PTO"). Plaintiff retained another law firm, Welsh & Katz, to take over the patent prosecution and terminated defendants' representation of Neurorepair in that matter on August 22, 2007. At the time plaintiff terminated defendants with respect to the prosecution of the Fallon patents, plaintiff continued to retain defendants for representation on other matters.

Defendants filed a request to withdraw as attorney with the PTO in September 2007. After transferring their files to Welsh & Katz at plaintiff's request, defendants did not have any involvement with the Fallon patent prosecution, or any matter relating to the underlying intellectual property, until March 2008. In March 2008, Matthew Klipstein, plaintiff's founder and CEO, asked Cogan to work with UC Irvine to amend the 2006 agreement. At some point, plaintiff terminated Welsh & Katz and retained Duane Morris to take over the Fallon patent prosecution. In April 2008, Klipstein asked Cogan to provide assistance with transferring the Fallon patent prosecution history to Duane Morris which Cogan did.

The following month, in May 2008, Klipstein executed the power of attorney substituting new counsel for defendants. In July 2008, Cogan concluded his work on the amended agreement [hereafter "novation agreement"].

After retaining a fourth law firm, Ropes & Gray, to take over the patent prosecution, plaintiff obtained the Fallon patents in July 2010.

**LEGAL STANDARD**

Summary judgment is properly granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Where the party moving for summary judgment does not bear the burden

of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." Id. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990); United Steelworkers v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989). Rather, "the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." Lujan, 497 U.S. at 885 (quoting Celotex, 477 U.S. at 323).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. See Schneider v. TRW, Inc., 938 F.2d 986, 990-91 (9th Cir. 1991).

## DISCUSSION

The Court will first address defendants' argument that plaintiff's claims are barred by the statute of limitations.

### A.     Statute of Limitations

California Code of Civil Procedure §340.6 states:

An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services, shall be commenced within one year after the plaintiff discovers, or through the use of reasonableness should have discovered, the facts constituting the wrongful act or omission . . . In no event shall the time for commencement of legal action exceed four years, except that the period shall be tolled during the time that any of the following exist:

The plaintiff has not sustained actual injury . . .

The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred . . . . Ca. Code Civ. Proc. §340.6

Under section 340.6, all legal malpractice claims except those for actual fraud are subject to a one year statute of limitations unless one of the tolling provisions applies. In the Complaint, plaintiff alleges four facts to support its claims: 1) defendants failed to obtain the Fallon patents for plaintiff; 2) defendants failed to assign an attorney with the requisite expertise to plaintiff's case; 3) defendants failed to reasonably respond to plaintiff's inquiries regarding its case; and 4) defendants improperly and/or overbilled plaintiff. Defendants argue that plaintiff discovered these facts in June or August 2007 and therefore plaintiff's complaint filed more than one year later on March 20, 2009 is untimely.

1.     Professional Negligence, Breach of Written Contract, Breach of Oral Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Negligent Misrepresentation Causes of Action

a. **Discovery of Wrongful Conduct**

On June 1, 2007, defendant Cogan informed plaintiff that the PTO issued a final rejection of the Fallon patent applications. That same day, Klipstein responded with the following email:

> From the San Diego office I have repeatedly heard that we "should" obtain the patents for which we have applied [although it is unclear whether that "should" occur within my lifetime], and I have heard every conceivable excuse relating to the problems with the PTO and mistakes made by the examiners to explain why, after 19 months and some $200,000 in bills I seem not a bit closer to having even a single patent.
>
> ..........................................
>
> I think it's time we considered what firm I should now retain to accomplish what I want. I am inclined to speak with Jennifer Gordon in the New York office of Sidley, Austin, but you may have other suggestions. Let's please just find a way to get this done, even if it requires another firm to do it. Doc. 59-6 at 34.

Defendants claim this email demonstrates plaintiff knew Cogan could not obtain the Fallon patents and the amount of attorney's fees charged by defendants on June 1, 2007. Two and a half months later, on August 22, 2007, Klipstein wrote another email to Cogan which states, in part:

> I want to stress again, as I have before, that I think you are a very good lawyer . . . .

5

A7

I am frustrated that we have not made more progress with the Examiners, and I hope that employing lawyers who are also PhD's in biology and chemistry will move things along more expeditiously. Of course, it may be that nothing will compel the PTO to move faster than it has, and I may regret making this change. Still, I have to try something and this is just about all there is for me to do.

So, I would like to ask you to do the following:
1. Prepare a summary of where we are and what remains to be done [including a schedule] for new counsel to follow;
2. Ship the entire file, including whatever documents the PTO will require for a change of counsel, to [Welsh & Katz]
3. Prepare a final bill for me which I will pay forthwith.

I would like you to continue to handle the Klipstein Equilibrium matter, if you don't mind. Please keep me posted about that. Doc. 59-6 at 1.

Defendants contend this email demonstrates plaintiff knew that the Nath Law Group did not have a lawyer with a science background assigned to its case. Defendants further argue that through this email Klipstein effectively terminated defendants' representation of plaintiff in the Fallon patent prosecution. The following month, in September 2007, defendants shipped the patent prosecution file to Welsh & Katz and filed a request with the PTO to withdraw from representation.

In response, plaintiff argues that the wrongful act underlying its malpractice claim is defendants' failure to submit a Rule 132 declaration with the patent application. According to plaintiff, it "could not have known that Defendants' failure to submit [a Rule 132 declaration] caused Neurorepair to suffer harm until the Examiner issued a Notice of Allowance in July 2010 expressly stating that such a declaration was sufficient to overcome previous obviousness rejections." Doc. 76 at 21.[2]

Plaintiff further argues that section 340.6 requires more than mere knowledge of facts "in the abstract." Doc. 76 at 17. Rather, a client "must know or suspect, or have reason to know or suspect, that the attorney has engaged in wrongful conduct." Id. Plaintiff claims that Klipstein's statement in the August 22, 2007 email, "I think you are a very good lawyer" and his request to have Cogan remain as counsel with respect to other matters indicates Klipstein did not suspect Cogan of malpractice. According to plaintiff, "simply being frustrated with the progress of one's case, or even bringing in

_____

[2]This court notes, however, that the PTO issued the Notice of Allowance more than one year after plaintiff filed the instant complaint. Thus, while defendants' failure to file a Rule 132 declaration may be further evidence of malpractice, it does not affect the discovery date of the malpractice allegations averred in plaintiff's complaint and therefore is irrelevant to this Court's statute of limitations analysis.

new lead counsel to 'move things along more expeditiously,' does not trigger the statute of limitations for a malpractice claim." Id. at 18.

Section 340.6 (a) provides that an action for legal malpractice shall commence "within one year after the plaintiff discovers, or through the use of reasonableness should have discovered, the facts constituting the wrongful act or omission." Ca. Civ. Pro. §340.6(a). Contrary to plaintiff's argument, the statute of limitations does not begin upon "discovery that such facts constitute professional negligence." Village Nurseries, L.P. v. Greenbaum, 101 Cal.App.4th 26, 43 (Cal.Ct. App. 2002)(citing Worton v. Worton, 234 Cal.App.3d 1638, 1650). If "plaintiff has suffered appreciable harm and knows or suspects that professional blundering is its cause, the fact that an attorney has not yet advised him does not postpone commencement of the limitations period." Worton, 235 Cal.App.3d at 1650 (citing Gutierrez v. Mofid, 39 Cal.3d 892, 898 (1985)).

The malpractice complained of by plaintiff in its Complaint is defendants' failure to assign a person with the requisite expertise to the Fallon patent prosecution. Further, the injuries alleged by plaintiff are the failure to receive the Fallon patents as well as the excessive fees paid to defendants. Even if plaintiff still believed defendants were competent attorneys with respect to other matters, the record is clear that Plaintiff suspected defendants' failure to have an attorney with a science background assigned to the Fallon patent prosecution resulted in the PTO's adverse decision. Based on this suspicion, plaintiff terminated defendants' representation in that matter and retained new counsel. That is sufficient to commence the statute of limitations. The limitations period does not begin anew every time plaintiff discovers new evidence of defendants' wrongful conduct.

### b. Actual Injury

Pursuant to section 340.6(a)(1), the statute of limitations period is tolled so long as the plaintiff "has not sustained actual injury." The "actual injury" suffered by plaintiff is the PTO's rejection of the application for the Fallon patents. The record indicates that Klipstein became aware of the PTO's decision on June 1, 2007. See Doc. 59-6 at 34. Based on the email correspondence it is also clear that Klipstein knew both the amount of fees charged by defendants and the fact that the Nath Law Group

did not have an attorney with a science background assigned to plaintiff's case by August 22, 2007. See Doc. 59-6 at 1. As plaintiff discovered both defendants' wrongful conduct and the resulting injury no later than August 22, 2007, the one year limitations period under section 340.6(a) commenced at that time absent additional tolling.

### c. Continuous Representation

Plaintiff alternatively argues that defendants' continuing representation tolled the limitations period until July 25, 2008. Under section 340.6(a)(2), the limitations period is tolled as long as "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." The purpose of the continuous representation exception in 340.6, as stated by the legislative history and California courts, is to "avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error, and to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired." Laird v. Blacker, supra, 2 Cal.4th at 618 (quoting Sen.Com. On Judiciary, 2d reading analysis of Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 17, 1977, p.3.).

The Court recognizes that at first glance the case law in California on continuing representation appears somewhat unclear. For example, in Gurkewitz v. Haberman, 137 Cal.App.3d 328 (Ca. Ct. App. 1982), the court held "so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representative." However, in Foxborough v. Van Atta, 26 Cal. App.4th 217 (Cal. Ct. App. 1994), the court found there was no continuing representation for tolling purposes when "an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to plaintiff." A thorough review of the pertinent cases is thus necessary to accurately determine what constitutes continuing representation for tolling purposes under California law.

In Gurkewitz, the clients sued their former attorneys for malpractice after their lawsuit was dismissed for failure to prosecute. 137 Cal.App.3d 328. After the dismissal the attorneys sent their

1  clients a letter on **November 20, 1978** stating an attempt to refile the lawsuit would be futile and

2  therefore they were closing their files on the case.  In the meantime, the opposing party in the

3  dismissed lawsuit filed a memorandum seeking costs of litigation.   On **December 20, 1978**, the

4  attorneys sent opposing counsel a letter to negotiate a reduction of those costs.  Ultimately, the

5  attorneys obtained an amended memorandum of costs.   On **March 23, 1979**, the attorneys sent

6  plaintiffs another letter that stated "With the delivery to you of this Memorandum . . . we believe that

7  our representation of you in this matter is terminated."   The <u>Gurkewitz</u> plaintiffs filed a malpractice

8  action against those attorneys on **November 26, 1979.**  While the attorneys argued the action was

9  barred by the one year statute of limitations because their representation of plaintiff ended on

10  **November 20, 1978**, the Court found continuous representation based on the negotiation letter sent

11  by the attorneys to opposing counsel on **December 20, 1978**.  Accordingly, the limitations period was

12  tolled until that date, making plaintiff's complaint timely.  However, the <u>Gurkewitz</u> Court was careful

13  to point out that not all contact between an attorney and their client amounts to representation.  Id. at

14  334.

15      In <u>O'Neill v. Tichy</u>, 19 Cal.App.4th 114 (Cal. App. 1993), the defendant attorney argued the

16  statute of limitations clock began when plaintiff hired a malpractice attorney to file a lawsuit against

17  him.  The court disagreed and found the limitations period tolled so long as the attorney continued to

18  provide representation.  Because plaintiff asked the defendant attorney to protect his right to appeal

19  the action in which the alleged malpractice occurred, despite hiring a malpractice lawyer, the court

20  found the attorney's actions could constitute continuous representation.   The court intimated,

21  however, that there would be no continuing representation for the purpose of section 340.6 if the

22  evidence demonstrated plaintiff hired another attorney to take over the appellate work.

23      The client in  <u>Gold v. Weissman</u>, 114 Cal.App.4th 1195 (2004),  retained an attorney to sue

24  her physician for medical malpractice.  On **October 23, 1998**, the attorney informed the client that he

25  failed to file the complaint within the applicable limitations period.  Subsequently, the attorney

26  suggested the client instead file a complaint with the medical board.  The attorney then sent a draft

27  medical board complaint to the client on **January 26, 1999**. On **January 25, 2000** the client filed a

28  malpractice claim against the attorney.  The attorney argued his representation on the matter at issue

9

ended on **October 23, 1998** when he informed plaintiff her court case was time barred. Plaintiff argued the attorney continued to provide representation until he sent the draft medical board complaint to her on **January 26, 1999**. Although the attorney claimed the malpractice complaint and the medical board complaint concerned different subject matters because they involved different forums and different options of recovery, the court found that both the unfiled malpractice lawsuit and medical board complaint arose from the same set of events, to wit, the doctor's malpractice. Accordingly, both items were part of the same, continuous representation on the specific subject matter underlying the legal malpractice suit.

In another case, Nielsen v. Beck, the clients retained attorney Beck to assist with the potential bankruptcy of their company. 157 Cal.App.4th 1041 (2007). At that time, the company leased a building which the clients personally guaranteed. On the attorney's advice, the company stopped making lease payments for the building. As a result, the building's owner filed an unlawful detainer action against the company and the clients that resulted in an adverse judgment against the clients personally for several hundred thousand dollars. After the judgment the clients executed a substitution of attorney form to replace Beck on **August 26, 2004.** Subsequently, the clients contacted Beck via telephone on three occasions, **September 9, 14, and 18, 2004**, concerning appropriate tactics for resolving the unlawful detainer judgment. Beck thereafter billed the clients for those telephone calls. The clients filed a malpractice claim against Beck on **September 2, 2005.** While Beck argued the case should be dismissed as untimely because the clients filed the lawsuit more than one year after they executed the substitution of attorney, the Court found there was a triable issue of fact about whether the three September phone calls evidenced continuing representation.

On the other hand, in Hensley v.Caietti, attorney Caietti represented plaintiff Hensley in divorce proceedings. 13 Cal.App.4th 1165 (Ca. Ct. App. 1993). The court entered a stipulation regarding property and support issues on September 28, 1989 and directed opposing counsel to prepare the judgment. Upon reviewing the proposed judgment on **November 3, 1989**, Hensley expressed her disapproval to Caietti about the terms and, after a heated argument, left the attorney's office . Hensley subsequently claimed she believed Caietti's representation of her ended on that day. Three days later, on **November 6**, Hensley asked another attorney, Pennee Parker, to replace Caietti. Parker informed

Hensley she could not undertake the representation until Caietti filed a substitution of attorney. Caietti then sent a letter to opposing counsel regarding the proposed judgment on **November 14, 1989**. On **November 16, 1989**, Caietti received a letter from Parker about Hensley's request to change counsel as well as a substitution of attorney form. The following day, **November 17, 1989**, Caietti sent opposing counsel amendments to the proposed judgment and stated Hensley had secured new counsel. Caietti signed the substitution of attorney on **November 20, 1989.** Hensley filed a malpractice action against Caietti based on the proposed judgment on **November 15, 1990.**

Caietti argued the one year limitations period began on **November 3, 1989**, the date Hensley believed the representation terminated, and thus the lawsuit filed on **November 15, 1990** was untimely. Hensley argued the limitations period began on **November 16, 1989**, when Caietti received the notice of discharge from Parker. The parties did not dispute that Hensley became aware of the actions underlying the malpractice action on **November 3, 1989.** The court found that the question of continuing representation should be viewed subjectively from the perspective of the client. Based on that finding, the court determined the limitations period began when Hensley asked Parker to be replacement counsel on **November 6, 1989.** But see Worthington v. Rusconi, 29 Cal.App.4th 1488 (Ca. Ct. App. 1994)(rejecting the subjective approach used by the Hensley court but finding that the same result would have been achieved under the proper objective standard that an "attorney's representation is concluded when the parties so agree, and that result does not depend upon formal termination, such as withdrawing as counsel of record")(internal citations omitted).

Relying on Gurkewitz, Hensley also argued that Caietti's representation continued until he sent the letter to opposing counsel with amendments to the proposed judgment on **November 17, 1989**. See Gurkewitz, 137 Cal. App.3d at 333 ("so long as there are unsettled matters tangential to a case, and the attorney assists the client with these matters, he is acting as his representive."). The Court stated the following:

> Caietti's letter transmitted the previously drafted proposed judgment and simultaneously informed [opposing counsel] that he had been discharged. The latter provision precluded Hoyle from taking it as an act of ostensible agency binding upon Hensley. Nothing in these circumstances could have induced Hensley to view the moribund relationship as continuing and deterred her from pursuing her malpractice remedy. Accordingly, posting the letter of November 17th did not count as an act of representation for purposes of Code of Civil Procedure section 340.6, subdivision (a)(2).

11

In <u>Foxborough v. Van Atta</u>, the court found the continuous representation rule:

is not triggered by the mere existence of an attorney-client relationship. Instead, the statute's tolling language addresses a particular phase of such a relationship- representation regarding a specific subject matter. Moreover, the limitations period is not tolled when an attorney's subsequent role is only tangentially related to the legal representation the attorney provided to plaintiff. . . Therefore, '**the inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated**.' . . . The continuous representation tolling rule assumes a relationship between the parties that is not sporadic, but which develops and continues from the professional services in which the alleged malpractice occurred. 26 Cal. App.4th 217, 228-29 (Cal. Ct. App. 1994)(Emphasis added).

The defendant attorney in <u>Foxborough</u> drafted a land exchange agreement in 1979 for his client and thereafter had sporadic involvement with issues relating to the land until 1985. In 1987, while new counsel represented the client in litigation regarding the land, the client hired the defendant attorney as an expert witness. The court entered judgment against the client in that litigation in March 1990. Three months later the client sued the defendant attorney for malpractice relating to the 1979 land exchange agreement. The client argued the attorney's retention as an expert witness in the litigation demonstrates continuous representation on the same subject matter and thus tolled the statute of limitations until March 1990 . The Court disagreed and found that the defendant attorney's change in role from being the plaintiff's legal representative to being an expert witness and consultant did not constitute continuing representation.

More recently in <u>Lockton v. O'Rourke</u>, the plaintiff retained the defendant attorneys to file a federal lawsuit against multiple people, including other attorneys ["original attorneys"]. 184 Cal.App.4th 1051, 1062 (Cal. Ct. App. 2010). The defendant attorneys agreed to file the lawsuit, but declined to name the original attorneys as defendants. Instead, the defendant attorneys described the malfeasance of the original attorneys in the complaint to preserve the right to amend and name the original attorneys as defendants should that prove necessary. The defendant attorneys also advised the plaintiff to obtain separate counsel to pursue claims against the original attorneys in state court. Plaintiff retained separate counsel in **June 2002** and filed a lawsuit in state court. However, the state court dismissed plaintiff's lawsuit in **March 2003** as time barred by the statute of limitations. After the state court dismissal, the defendant attorneys continued to represent plaintiff in the federal lawsuit until **August 2003.**

The plaintiff in <u>Lockton</u> subsequently sued the defendant attorneys for malpractice in **April 2004** for failure to file a timely state court lawsuit against the original attorneys. According to plaintiff, because the defendant attorneys' representation in the federal lawsuit ended in **August 2003**, there was continuous representation until that point. The defendant attorneys argued their representation on the matter involving the original attorneys ended when plaintiff obtained new counsel to file that lawsuit in state court. The court agreed with the defendants and found that "[t]olling does not apply where there is a continuing relationship between the attorney and client 'involving only unrelated matters.'" 184 Cal.App.4th at1064 (internal citations omitted). According to the court, while the defendant attorneys were retained to take action against the original attorneys, the defendant attorneys ceased taking such action after plaintiff hired a new attorney for that purpose. Further, although the federal allegations were similar to those that would have been pursued in state court against the original attorneys, the court nonetheless found the defendant attorneys' representation in the federal lawsuit "not enough to establish continuing conduct." Id. at 1068. The court also cited <u>Beal Bank, SSB v. Arter & Hadden</u>, LLP, 42 Cal.4th 503, 514 fn.8 (2007), where the California Supreme Court stated:

> "Once representation on that matter ends, a client must bring timely suit, notwithstanding that the attorney may continue to represent the client on a range of matters and a direct suit against the attorney may interfere with the attorney-client relationship in all other such matters. Had the Legislature intended preservation of the attorney-client relationship as a dispositive trump card, it would not have so limited the scope of the tolling exception."

From the above cases, three principles are clear. First, the mere existence of an attorney-client relationship is insufficient to toll the statute of limitations under section 340.6(a)(2). Rather, the attorney must continue to **represent** the client, in a legal capacity, on the same subject matter in which the alleged malpractice occurred. See <u>Foxborough</u>, 26 Cal. App.4th 217. Next, the term "subject matter" is narrowly defined such that it does not include the entire spectrum of issues for which an attorney might be retained, but only the specific matter that underlies the malpractice lawsuit. See <u>Lockton,</u> 184 Cal.App.4th 1051. Finally, any act of representation, excluding purely administrative tasks, by the attorney on that specific subject matter, regardless of how minuscule, is sufficient to toll the statute of limitations. See <u>Gurkewitz</u>, 137 Cal.App.3d 328; <u>Nielsen</u>, 157 Cal.App.4th 1041.

With the above principles and cases in mind, the Court now turns to the facts presented here. Plaintiff claims there are three facts that occurred more than six months after defendants' termination which evidence defendants' continuing representation: 1) Klipstein's deposition testimony stating he never intended to terminate defendants; 2) the power of attorney substituting new counsel for defendants became finalized in May 2008; 3) billing entries related to the Fallon patent prosecution for work performed on three separate dates in April and May 2008 that plaintiff was not charged for; and 4) Defendants' work on the novation agreement between March 4, 2008 and July 24, 2008.

These facts are not in dispute. During his deposition Klipstein states, "I didn't decide to terminate them. I never did terminate them. I removed Mr. Cogan as the individual attorney representing NeuroRepair respecting the Fallon applications at the patent office." Doc. 79-8 at 13-14. Klipstein further states that after October 13, 2007, "I expected that Mr. Cogan would not have any further contact with the patent office on behalf of NeuroRepair." Id. at 16. Klipstein also states he sent payment for the "final" bill to Cogan on October 13, 2007. Doc. 52-1 ¶12. At best for plaintiff, October 13, 2007 was the final day on which defendants acted as plaintiff's representative on the Fallon prosecution matter. However, this does not preclude a subsequent finding that the representation actually terminated on August 22, 2007. From this testimony it is clear that plaintiff did not intend for defendants to provide representation on the Fallon patent prosecution after October 13, 2007.

It is also undisputed that defendants filed a request to withdraw as counsel in September 2007. The caselaw is clear that a formal withdrawal of attorney is not necessary to end representation for the purpose of section 340.6. See, e.g., Worthington v. Rusconi, 29 Cal. App. 4th 1488, 1497 (1994). Therefore, the fact that Klipstein ultimately executed the power of attorney substituting new counsel for defendants in May 2008 is not probative of continuing representation. See 77-2 at 42.

Plaintiff also argues that "[d]efendants' request to withdraw in September 2007 does not demonstrate that, as of that date, Neurorepair actually and reasonably believed that Defendants would provide no further legal services concerning the prosecutions." Doc. 64 at 10. This statement is belied by Klipstein's request for Cogan to ship the entire file regarding the patent prosecutions to a new attorney and plaintiff's retention of not one, but two separate attorneys during the time period it

1   supposedly believed defendants would continue providing representation on the Fallon patent

2   prosecution matter.   In his declaration, Klipstein admits that on August 22, 2007, "I advised Mr.

3   Cogan that Neurorepair had decided to replace Cogan and the Nath Law Firm with new counsel as to

4   the Fallon Patent Applications.  Doc. 52-1 ¶16.  The Court therefore finds this argument lacks merit.

5        As for the billing entries dated April 10 and April 22, 2008, the record shows those entries

6   relate to defendants' work transmitting the prosecution histories of the Fallon patents to plaintiff's new

7   attorney after plaintiff terminated Welsh & Katz.   Plaintiff argued for the first time during oral

8   argument that the portion of the April 10, 2008 entry that states, "Brief review of three new Official

9   Actions and comments to Ms. Norton" demonstrates defendants actually were representing plaintiff

10  rather than merely transporting files to new counsel.  However, the brief contact between plaintiff's

11  former attorney and its new attorney, even if on the subject of the Fallon patent prosecution, cannot

12  constitute continuous representation where the plaintiff has clearly indicated that the former attorney

13  is no longer his representative on that matter.  See Hensley, 13 Cal.App.4th at 1165.

14       The only remaining issue is whether defendants' work on the novation agreement constitutes

15  continuous representation "regarding the specific subject matter in which the alleged wrongful act or

16  omission occurred," namely the prosecution of the Fallon patents.   In its opposition to defendants'

17  summary judgment motion, plaintiff describes defendants' work on the novation agreement as

18  "substantive work on documents directly related to the technology of the Patent Applications at issue

19  . . .[performed] at the request of Neurorepair, as an ongoing client of the firm."  Doc. 76 at 14.

20  During his deposition, Klipstein described Cogan's work on the novation agreement in the following

21  manner:

22       Mr. Cogan participated in and I would say was somewhat useful in helping me to communicate
         with the University's counsel, who was at that time Bozicevic, because although I later
23       established a rapport with Karl Bozicevic to be a very nice guy, we got along just fine,
         initially, I found him impossible to communicate with.  So Mr. Cogan acted largely, I would
24       say, as an analogy, like a translator.  I could explain to Mr. Cogan, and he could explain it to
         Mr. Bozicevic.  Doc. 89-8 at 9-10.

25

26  Plaintiff also contends the fact that Cogan billed his work regarding the novation agreement under the

27  same client matter number as work regarding the patent prosecution is evidence that Cogan's work

28  on the novation agreement was continuing representation on the same subject matter.  Doc. 76 at 11.

There is no dispute that the original agreement drafted by Cogan between UC Irvine and plaintiff gave plaintiff the rights to the intellectual property underlying the Fallon patents. There is also no dispute that none of the allegations in the instant complaint stem from defendants' work on either the original agreement or the novation. This court does not believe it can be seriously contended that Cogan's handling of a contractual matter on behalf of Klipstein is not representation within the meaning of section 340.6 (a)(2). The only question is whether Cogan's work on the novation agreement can constitute ***continuing*** representation on the specific subject matter of the Fallon patent prosecution in light of plaintiff's termination of defendants on that matter and retention of another attorney to perform that work. On this point, the Lockton case is instructive. In Lockton, the court found no continuing representation on the same subject matter by the defendant attorneys where the client retained a different attorney to pursue claims against certain individuals in state court even though the defendant attorneys were simultaneously litigating a federal lawsuit that contained allegations of wrongdoing by those same individuals.

The instant facts weigh even more heavily against a finding of continuous representation. Here, the client retained another attorney to prosecute the Fallon patents. Unlike the ongoing litigation by the defendant attorneys in Lockton, in this case the client waited several months after obtaining new counsel to ask Cogan to revise a previously drafted agreement that related to the technology rights underlying the Fallon patents, but was not specifically part of the patent prosecution. As in Lockton where the allegations in the state lawsuit and the federal lawsuit were the same, here the technology discussed in the novation agreement is the same as the technology in the Fallon patents. Similarly, as the client's retention of another attorney to pursue the state lawsuit in Lockton sufficed to end any "continuous representation" on that issue, so did plaintiff's retention of another attorney to prosecute the Fallon patents eliminate the possibility of continuous representation by defendants on that specific subject matter.

The Court's finding is bolstered by the purpose of the continuing representation rule. According to the California Legislature, the continuing representation rule allows the client and attorney to avoid the disruption of a lawsuit while the attorney attempts to correct an error. See Laird v. Blacker, supra, 2 Cal.4th at 618 (quoting Sen.Com. On Judiciary, 2d reading analysis of Assem. Bill

16

1    No. 298 (1977-1978 Reg. Sess.) as amended May 17, 1977, p.3.).  Further, the rule prevents an

2    attorney from continuing to represent their client until the statute of limitations expires.  Id.  Neither

3    of these purposes is served by a finding that the continuous representation tolling provision applies

4    here.[3]  Cogan's work on the novation agreement did not allow him to fix any errors made during the

5    patent prosecution or mitigate plaintiff's damages.  Further, after Cogan's termination from the patent

6    prosecution defendants immediately filed a request to withdraw as counsel so there was no concern

7    that defendants would attempt to represent plaintiff until the limitations period expired.[4]

8         In sum, the specific subject matter in which the alleged malpractice occurred is the Fallon

9    patent prosecution.  Defendants no longer represented plaintiff in this matter after October 13, 2007.

10   The assistance provided by defendants with respect to transferring  the Fallon prosecution files to

11   plaintiff's new counsel and updating new counsel on the matter amounts to professional courtesy, not

12   representation.  Additionally, Cogan's work on the novation agreement involved a different matter

13   than the one in which the alleged malpractice occurred.  Even if the matters were the same, because

14   plaintiff terminated Cogan on this matter any subsequent work performed by Cogan on that matter

15   would be deemed a new representation rather than a continuous representation. Accordingly, the

16   continuous representation tolling provision is inapplicable here.  Because plaintiff filed the instant

17   complaint more than one year after it discovered the alleged wrongful acts and omissions underlying

18   its lawsuit, and no tolling applies, plaintiff's claims for professional negligence, breach of written

19   contract, breach of oral contract, breach of implied covenant of good faith and fair dealing, and

20   negligent misrepresentation are time barred.[5]

21

22        [3]See also Fritz v. Ehrmann ("by 'continues to represent' the Legislature meant that the statute
     of limitations for legal malpractice is tolled as long as the attorney 'continues to represent' a client
23   who comes to him or her after the potential malpractice manifests itself and before the statute of
     limitations has run in an attempt to rectify the problem or mitigate damages.)" 136 Cal.App.4th 1374,
24   1391 (Ca. Ct. App. 2006).

25        [4]This finding also ensures that malpractice plaintiffs do not seek an end run around the statute
     of limitations by rehiring their former attorney for a minor assignment months after the representation
26   on the subject matter underlying the malpractice lawsuit has ended.

27        [5]Plaintiff also argues there is continuing representation because there is no evidence plaintiff
     prohibited defendants from performing any legal services relating to the patent applications after
28   August 22, 2007.  See Doc. 64 at 9; Doc. 76 at 14.  However, in light of the fact that plaintiff
     requested defendants ship their patent prosecution files to another law firm so that new counsel could
     prosecute the Fallon patents, along with any documentation the PTO would require for a change of

                                                    17                              09CV0986 JAH (WMC)

2.    Breach of Fiduciary Duty Cause of Action

Regarding the breach of fiduciary duty claim, plaintiff argues that the statute of limitations did not begin to run on August 22, 2007 because plaintiff did not discover the facts underlying the claim until the production of an email during discovery on February 19, 2010. According to plaintiff, that email demonstrates the Nath Law Group had concerns about Cogan's representation of plaintiff while defendants were still retained as counsel.[6] Plaintiff claims the Nath Law Group never informed it about those concerns and therefore plaintiff could not have discovered this alleged breach of fiduciary duty until it reviewed this email.

Plaintiff filed its Complaint on March 20, 2009. This filing date occurred almost eleven months before plaintiff discovered this email. The breach of fiduciary duty claim, as asserted in the Complaint, alleges defendants did not provide competent legal services to plaintiff, did not reasonably respond to plaintiff's inquiries, and overbilled plaintiff while failing to provide the work product for which they charged. See Comp. ¶ 30-32. The harm alleged by plaintiff is excessive fees, damages incurred from the delay in receiving its patents, and the potential inability to obtain a patent. These are the same allegations underlying the other claims asserted in the Complaint. Because plaintiff knew facts to support this claim no later than August 22, 2007, the statute of limitations commenced on that

---

counsel, and Klipstein's deposition testimony stating that after October 13, 2007, "I expected that Mr. Cogan would not have any further contact with the patent office on behalf of NeuroRepair," Doc. 79-8 at 16, the Court finds this argument untenable.

[6]The July 25, 2007 email referenced by plaintiff, from the managing partner at the Nath Law Group to Cogan, states:

It has come to my attention that Matthew at Neurorepair has not made himself available to speak with Sue. It has now been nearly 2 months since that Introduction should have been made. We are all getting very worried that the client does not wish to speak to her because of a very large estimate you gave him in the e-mail trail below as compared to the far more reasonable number Sue estiamted, around $10,000, a few weeks ago. This is a $40,000 swing!
.
At this point, you need to go back to the client and revise your estimate to be in line with what Sue has provided to you. We do not understand where you got $50,000 and why you would provide such information to a client who has already spent more than $100,000 with us and has nothing to show for it. You then must, and I mean MUST, let him know that you cannot work any more on this matter and that Sue will be taking it over with your MINIMUM support. Enough is enough. This handoff should have happened months ago. I do not understand why it has still not. If this doesn't happen next week, I will be forced to contact Matthew myself. Please do not make this necessary. Doc. 54-1 at 2.

date.[7]  As mentioned previously, plaintiff's discovery of additional facts to support its claim does not

toll the limitations period.  Accordingly, the breach of fiduciary duty claim is also time barred.

3.    False Promise Cause of Action

With respect to the false promise claim, plaintiff argues that claim is in essence one for actual

fraud and thus subject to the three year statute of limitations set forth in California Code of Civil

Procedure § 338(d).

In its false promise claim, plaintiff alleges that before it entered into an attorney client

relationship with defendants, Cogan "represented to Plaintiff that Defendants had an attorney with

training and expertise in neuroscience who would be primarily responsible for Neurorepair's patent

prosecution if Neurorepair retained Defendants, and that Defendants could and would effectively and

aggressively prosecute the Patent Applications and obtain the patents."  Comp. §56.  Plaintiff further

alleges that  defendants never provided the representation it promised and acted "with malice, fraud

or oppression"in making that promise.  Id §65.

Defendants cite Quintilliani v. Mannerino, 62 Cal.App.4th 54 (Ca. Ct. App. 1998) for the

proposition that the actual fraud exception in section 340.6 does not apply to claims for constructive

fraud resulting from negligent misrepresentation, which defendants argue is the correct

characterization of plaintiff's false promise claim. Id. at 69-70.  In Quintilliani, the plaintiff brought

a negligent misrepresentation claim based on the fact that his attorney lacked the necessary expertise

and experience to advise him despite the attorney's representations to the contrary.  Id.  The

defendants here argue that plaintiff's claim, like the one asserted in Quintilliani is essentially one for

negligent misrepresentation because "Plaintiff has failed to produce any evidence whatsoever of actual

and specific intent by Defendants not to perform the 'promise' they allegedly made to induce Plaintiff

---

[7]Additionally, there is also no evidence that defendants willfully concealed the facts underlying the allegations asserted in the Complaint such that the tolling provision listed in section 340.6(a)(3) applies.  See Cal. Civ. Pro. §340.6 (a)(3) (allowing tolling in cases where "[t]he attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.).  Defendants' alleged concealment of an additional fact to support the breach of fiduciary duty claim is not sufficient to make this provision applicable where plaintiff had notice of sufficient facts to state this claim in its Complaint.

19

into retaining them." Doc. 81 at 11.

In this case, unlike <u>Quintilliani</u>, plaintiff asserts both a negligent misrepresentation and a false promise claim. The false promise claim alleges defendants did not intend to perform the promise of providing an attorney with the necessary neuroscience expertise at the time the promise was made. Comp. ¶58. Defendants have not sought to dismiss plaintiff's false promise claim based on lack of specificity. Rather, defendants seek to have the court construe plaintiff's false promise claim as a negligent misrepresentation claim rather than an intentional misrepresentation claim, without providing any authority for the court to do so.

To state a claim for false promise, plaintiff "must specifically allege and prove, among other things, that the promisor did not intend to perform at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing." <u>Tarmann v. State Farm Mutual Automobile Ins. Co.</u>, 2 Cal.App.4th 153, 159 ( Ca. Ct. App. 1991). Because of the specific intent requirement, a false promise claim is one for intentional misrepresentation, or actual fraud, rather than negligent misrepresentation. Id.

Under <u>Tarmann</u>, plaintiff's false promise claim is one for actual fraud and the applicable limitations period is three years. While the exact date when defendants discovered that defendants did not intend to perform the promise of assigning an attorney with a neuroscience background to its case is uncertain, it is clear plaintiff knew as much by the time it terminated defendants on August 22, 2007. Plaintiff asserts it suffered actual injury as a result of defendants' alleged false promise on June 1, 2007 when the PTO issued a final rejection of the Fallon Patents. Therefore, plaintiff's false promise claim filed on March 20, 2009 is well within the three year limitations period.

**B.  Causation**

Defendants also contend summary judgment should be granted on all claims because plaintiff cannot prove that defendants' conduct caused plaintiff any harm. Because the court has already granted summary judgment as to the other claims on statute of limitations grounds, the court will only discuss the causation argument as it applies to the false promise claim.

In its complaint, plaintiff states it "was harmed by Defendants' failure to provide an attorney with training and expertise in neuroscience and/or effectively and aggressively prosecute the Patent Applications. If Defendants had performed their promises, Defendants would not have submitted erroneous work product to the PTO, would have provided competent work that would have furthered Plaintiff's Patent Applications, and would have pursued the Patent Applications effectively and aggressively before the PTO." Comp. ¶62. The damages claimed by plaintiff are "excessive fees billed to and paid by Plaintiff, additional attorneys' fees and expenses incurred by Plaintiff, and/or damages caused to Plaintiff resulting from the delay in obtaining its patents and/or the ultimate narrowing or inability to obtain patent protection for its new and novel inventions." Id. ¶64.

Defendants make two arguments to support their contention that plaintiff cannot prove causation: 1) "Plaintiff cannot prove that any action defendant could have taken would have resulted in an issuance of its patents" [Doc. 59-1 at 26]; and 2) "Plaintiff cannot prove that had its patents issued in 2006, it would have, as a legal certainty, sold its patents for a higher amount." Id. at 28.

As to their first argument, Defendants claim that after their termination plaintiff retained new counsel at Duane Morris who was educated in the biological sciences and submitted the Rule 132 declaration that plaintiff insists was critical to obtaining the patents; however, that counsel ultimately also lacked success in obtaining the Fallon patents. Accordingly, defendants' claim their failure to submit a Rule 132 declaration did not cause plaintiff any harm.

Additionally, defendants refer to the July 2010 Notice of Allowance that states three reasons for the examiner's decision to finally allow the Fallon patents: 1) narrowing of the patent claims; 2) the Rule 132 declaration; and 3) articles published in 2009 and 2010 explaining the novelty of the underlying technology. Doc. 76-3 at 6. Defendants contend they could not have submitted the 2009 and 2010 articles as part of their patent application in 2007 as those articles had not been published yet. Thus, defendants argue plaintiff cannot prove that any action defendants could have taken during their representation would have resulted in an earlier issuance of the Fallon patents.

Regarding their second argument, defendants claim that since plaintiff ultimately received the Fallon patents in 2010, plaintiff only suffered harm if it could have sold or licensed the patents for more money in 2006. Defendants dispute the analysis performed by plaintiff's damages expert that

1  plaintiff would have received significant licensing and royalty fees if plaintiffs had received the

2  patents earlier.

3         In response, plaintiff argues that the malpractice alleged is defendants' failure to submit a Rule

4  132 declaration that contained specific information from the inventor which only their last counsel at

5  Ropes & Gray submitted.  Despite defendants' argument that the PTO relied on three separate bases

6  to issue the Notice of Allowance, plaintiff claims the Rule 132 declaration was sufficient in and of

7  itself to overcome the PTO's rejection.  Nonetheless, plaintiff maintains the pertinent data in the 2009

8  and 2010 articles was available by 2001 and could have been accessed by defendants if they had made

9  the appropriate inquiries.  Finally, plaintiff argues that it does not rely on its damages expert to prove

10  causation, as defendants contend.  Rather, plaintiff relies on an industry expert, Casey Lynch, who

11  claims plaintiff could have negotiated better partnerships and licensing agreements had the Fallon

12  patents been procured during defendants' representation.

13         The Court finds there is a genuine issue of material fact about whether defendants' alleged

14  failure to provide an attorney to plaintiff with the requisite training and expertise in neuroscience

15  caused the delay in obtaining the patents.  In the Notice of Allowance, the PTO  states that the reason

16  for the allowance is based on the claim amendment, the declaration filed on 5/17/10 (Rule 132

17  Declaration) and the inventors' post-filing date publications.  Doc. 76-3 at 6.  Yet, the PTO also states

18  that the Rule 132 declaration "is sufficient to overcome the rejection under 35 U.S.C. 103(a) . . . ."

19  Defendants contend all three reasons cited by the PTO were necessary for the allowance while plaintiff

20  argues only the Rule 132 declaration was necessary.  Further, defendants claim they did not have

21  access to the inventors' post-filing date publications [the 2009 and 2010 articles] during their

22  representation of plaintiff while plaintiff argues the information was available during that time.  The

23  need to resolve these factual disputes prior to determining liability precludes the granting of summary

24  judgment for this claim.

25         Finally, in regard to defendants' argument that plaintiff cannot prove the patents would have

26  been worth more if issued in 2006, the Court finds that is an issue more appropriate for a damages

27  inquiry rather than causation.  In its claim for false promise,  plaintiff does not argue that but for

28  defendants' promise it would have obtained a more favorable licensing agreement in 2006.  Rather,

22

A24

plaintiff argues that if it had received the promised representation, it would have obtained the patents earlier. Thus, if plaintiff is successful in proving that defendants intentionally made a false promise to provide plaintiff an attorney with specific expertise and in reliance on that promise plaintiff experienced a four year delay in receiving its patents, the next question will be the extent of plaintiff's damage. Plaintiff lists three separate types of damages: 1) defendants' excessive fees; 2) the additional attorneys fees plaintiff incurred; and 3) the damage caused from the delay in obtaining the patents. Any damage caused from the patent delay will ultimately only be one-third of the damages analysis. Consequently, regardless of whether plaintiff is able to demonstrate damages caused by the delay, it has still pled additional damages not contested by defendants in their motion. As a result, summary judgment is inappropriate for the false promise claim.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that summary judgment is GRANTED for defendants on plaintiff's claims for professional negligence, breach of fiduciary duty, breach of written contract, breach of oral contract, breach of implied covenant of good faith and fair dealing, and negligent misrepresentation. Summary judgment is DENIED with respect to plaintiff's claim for false promise. Because plaintiff's claims for professional negligence and breach of fiduciary duty are time barred, plaintiff's motion for partial summary judgment on the issue of liability with respect to those claims is DENIED.

Dated: July 12, 2011

_____
John A. Houston
United States District Judge

09CV0986 JAH (WMC)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NEUROREPAIR, INC. | ) | Civil No. 09CV0986 JAH (WMC) |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING PLAINTIFF'S** |
| v. | ) | **MOTION FOR RECONSIDERATION** |
| | ) | |
| THE NATH LAW GROUP, *et al* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the court is plaintiff's Motion for Reconsideration. For the reasons stated below, plaintiff's motion is DENIED.

**INTRODUCTION**

On July 13, 2011, this Court granted defendants' motion for summary judgment in part and dismissed plaintiff's claims for professional negligence, breach of fiduciary duty, breach of written contract, breach of oral contract, breach of implied covenant of good faith and fair dealing. Plaintiff filed the instant motion for reconsideration on August 10, 2011.

///

///

///

**LEGAL STANDARD**

Under F.R.C.P. 59(e), "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003).

**DISCUSSION**

In its motion, plaintiff argues that the Court erred, "as a matter of fact and of law, by finding that the continuous representation exception does not apply to plaintiff's claims. The Court finds plaintiff's argument lacks merit.

Plaintiff filed a Complaint on March 20, 2009 asserting seven claims for relief. Each claim is based on alleged legal malpractice by defendants. The Court dismissed six of the seven claims after finding they were barred by the applicable statute of limitations. The primary issue in the Court's statute of limitations analysis concerned whether section 340.6(a)(2) of the California Civil Code applied to plaintiff's claims. Under that provision, the one year limitations period for legal malpractice claims, save those based on actual fraud, is tolled so long as "[t]he attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." Ca. Civ. Code §340.6(a)(2). In its order, the Court found that the specific subject matter in which the alleged wrongful act or omission occurred is the prosecution of the Fallon patents. The Court also found that plaintiff terminated its lawyer, defendant Robert Cogan, in that matter no later than October 13, 2007. Although the Court recognized that plaintiff still retained Cogan for work in other matters, the Court found that the critical factor for determining whether the continuous representation exception applied is whether Cogan continued to represent plaintiff specifically on the matter involving the prosecution of the Fallon patents after his termination. Because the Court answered that question in the negative, the Court found the statute of limitations began to run on October 13, 2007 thereby making plaintiff's complaint filed on March 20, 2009 untimely.

09CV0986 JAH (WMC)

A27

In the instant motion, plaintiff claims that "[w]hether there was 'continued representation' depends, obviously, upon the scope of what the Nath firm was retained to do." Doc. 107-1 at 2. Plaintiff argues "the Court has been misled by Defendants into error where it assumes that [defendants'] representation was confined to representing NeuroRepair at the US Patent and Trademark Office." Doc. 107-1 at 4. While plaintiff acknowledges that plaintiff's CEO did remove Cogan from the task of representing plaintiff in the prosecution of the Fallon patents, plaintiff contends that is not relevant for purposes of the continuous representation analysis because defendant Nath Law Group was retained "to do <u>everything</u> in connection with perfecting the Company's right, title, and interest in and to all of the Company's Intellectual Property." Doc. 107-1 at 2. Because Cogan performed work on a contract relating to the intellectual property underlying the Fallon patents and worked with plaintiff on other patents until July 2008, plaintiff argues there was continuous representation until that date.

Plaintiff also argues that the appropriate standard for continuous representation is whether the continuous work by the attorney was "intertwined and interrelated, having overlapping objectives and purposes" with the matter in which the malpractice occurred. Doc. 107-1 at 8 (citing Gurkewitz v. Haberman, 137 Cal.App.3d 328,333 (1982) and Nielsen v. Beck, 157 Cal.App.4th 1041 (2007)).

The facts recited by plaintiff in the instant motion are the same facts contained in plaintiff's summary judgment briefing. Plaintiff argued in its summary judgment briefing that Cogan's continued **retention** by plaintiff on matters unrelated to the Fallon patents and Cogan's work on the novation agreement several months after plaintiff's CEO removed him from the task of prosecuting the Fallon patents, constituted continuous **representation**. After a lengthy review of California caselaw on continuous representation, the Court disagreed with plaintiff's argument. The Court found the reasoning in Beal Bank, SSB v. Arter & Hadden and Lockton v. O'Rourke, as well as the additional cases cited in its order, applicable to the instant case.

In Beal Bank, SSB v. Arter & Hadden, LLP, 42 Cal.4th 503, 514 fn.8 (2007), the California Supreme Court stated:

> Once representation on that matter ends, a client must bring timely suit, notwithstanding that the attorney may continue to represent the client on a range of matters and a direct suit against the attorney may interfere with the attorney-client relationship in all other such matters. Had the Legislature intended preservation of the attorney-client relationship as a dispositive trump

1   card, it would not have so limited the scope of the tolling exception.

2   Additionally, in <u>Lockton v. O'Rourke</u>, the California Court of Appeals found that plaintiff's retention

3   of a new attorney to file charges in a specific matter in state court sufficed to end the representation

4   by plaintiff's former attorneys with respect to that matter, despite the fact that the former attorneys

5   were still retained by plaintiff to litigate a related matter in federal court. 184 Cal.App.4th 1051 (Cal.

6   Ct. App. 2010).

7   Despite plaintiff's claims to the contrary here, the Court recognized that defendants continued

8   to represent plaintiff on **other matters** after Cogan was removed from the matter of prosecuting the

9   Fallon Patents. However, that does not alter the fact that in August 2007 plaintiff retained a new

10   attorney to take over the "task" or matter of the Fallon patent prosecution. Although plaintiff argues

11   that it did not terminate defendants on that matter and simply changed Cogan's role from "'first chair'

12   to an advisory position," [Doc. 107-1 at 5] that statement is belied by the evidence. <u>See</u>, <u>e.g.</u>, Klipstein

13   Decl. at 16 ("I expected that Mr. Cogan would not have any further contact with the patent office on

14   behalf of NeuroRepair."). Regardless of any other work Cogan performed for NeuroRepair until June

15   2008, Cogan's representation of NeuroRepair on the prosecution of the Fallon patents ended by

16   October 13, 2007. The continuous representation exception only applies so long as "[t]he attorney

17   continues to represent the plaintiff regarding the **specific subject matter** in which the alleged

18   wrongful act or omission occurred." Ca. Civ. Code 340.6 (a)(2)(emphasis added). Because plaintiff

19   only alleges malpractice by defendants with respect to the Fallon patent prosecution, the statute of

20   limitations began to run on October 13, 2007, the date defendants no longer represented plaintiff in

21   that matter. Any representation by defendants on other matters does not suffice to invoke the

22   continuous representation tolling provision outlined in section 340.6(a)(2). Accordingly, Plaintiff's

23   Motion for Reconsideration is DENIED. The hearing date of October 17, 2011 set for hearing the

24   instant motion is VACATED.

25

26   Dated: August 19, 2011                    _____

27                                                      John A. Houston
                                                 United States District Judge
28

4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROREPAIR, INC., | Civil No. 09CV0986 JAH (WMC) |
| Plaintiff, | **ORDER FOLLOWING HEARING:** |
| v. | **GRANTING DEFENDANTS' IN** |
| | **LIMINE MOTION TO** |
| THE NATH LAW GROUP et al., | **EXCLUDE/PRECLUDE EVIDENCE** |
| | **OF PLAINTIFF'S LOST-** |
| Defendants. | **LICENSING OPPORTUNITY** |
| | **DAMAGES AT TRIAL** |
| | |
| | **[DKT. NO. 132]** |

On February 3, 2012, Defendants filed an in limine motion to preclude evidence of Plaintiff's lost-licensing opportunity damages at trial. The motion was fully briefed, and this Court heard oral argument on March 5, 2012. Based on the parties' submissions and oral arguments, the record in this matter, and for the reasons that follow, this Court hereby **GRANTS** Defendants' motion.

A motion in limine is any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered. The purpose of a motion in limine is to avoid the futile attempt to "unring the bell" when prejudicial evidence is offered and then stricken at trial.

Generally, "[o]ne who willfully deceives another with the intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709. "For the breach of an obligation not arising from contract, the

1  measure of damages, except where otherwise expressly provided . . . is the amount which

2  will compensate for all the detriment proximately caused thereby, whether it could have

3  been anticipated or not." Id. § 3333.

4      There are two measures of damages for fraud: out-of-pocket damages and

5  benefit-of-the-bargain damages – each of which is designed to compensate a tort plaintiff

6  in a way that attempts to put the plaintiff in the position he or she would have enjoyed

7  but for the tort. See First Alliance Mortg. Co., 471 F.3d 977, 1001 (9th Cir. 2006).

8  Thus, the amount necessary to compensate a fraud victim may include economic loss

9  caused by a delay that is the result of fraud. Indeed, Defendants concede that delay

10  damages are, in general, recoverable in a fraud action.

11      Whatever the proper measure of damages may be, however, the recovery is still

12  subject to the fundamental rule that damages which are speculative, remote, imaginary,

13  contingent, or merely possible cannot serve as a legal basis for recovery. Engle v. Oroville,

14  238 Cal. App. 2d 266, 272 (1965). For example, damages that depend on the act of a

15  third person or the happening of a certain event are generally too uncertain to be

16  recoverable. Agnew v. Parks, 172 Cal. App. 2d 756, 768 (1959). Indeed, "the mere

17  probability that a certain event would have happened, upon which a claim of damages is

18  predicated, will not support such claim nor furnish the foundation for an action for such

19  damages." McQuilkin v. Postal Telegraph Cable Co., 27 Cal. App. 698, 701 (1915).

20      With regard to lost prospective opportunities – such as lost profits – the general rule

21  is that they must not be uncertain or speculative. This rule applies to the questions of (1)

22  whether the loss of those opportunities was the result of the wrong and (2) whether such

23  opportunities would have been derived at all – not the dollar value of those opportunities.

24  See Noble v. Tweedy, 90 Cal. App. 2d 738, 745-46 (1949). As to dollar value, only a

25  reasonable basis for computation need be supplied to estimate the monetary value of lost

26  prospective opportunities, and a tortfeasor cannot complain about the need to use an

27  estimate in determining the value of those opportunities. Id. Loss of prospective

28  opportunities from an unestablished business, however, is ordinarily considered too

1  uncertain to merit compensation. <u>Parlour Enter., Inc. v. Kirin Group, Inc.</u>, 152 Cal. App.

2  4th 281, 288 (2007).  "[E]xpert testimony alone is a sufficient basis for an award of lost

3  profits in the new business context when the expert opinion is supported by tangible

4  evidence with a substantial and sufficient factual basis rather than by mere speculation

5  and hypothetical situations."  <u>Id.</u> (internal quotations omitted).

6        Here, the first Court finds that whether Plaintiff's purported lost-licensing

7  opportunities was the result of Defendants' alleged false promise to be too speculative,

8  remote, and uncertain to recover damages under that theory.  Plaintiff has not proffered

9  evidence of any actual or potential party interested in licensing its technology – either in

10  2006 or now, two years after Plaintiff finally obtained its patents.  Plaintiff's theory rests

11  on the opinion of an industry expert (Ms. Lynch) who can only state that, had Plaintiff

12  received its patents in 2006, Plaintiff would have been in a group of companies likely to

13  license their technology, but that, because so many factors go into a licensing decision, it

14  would be impossible to say with any certainty which companies in that group would

15  actually license their technology.  The Court finds the opinion of Plaintiff's expert is not

16  supported by tangible evidence with a substantial and sufficient factual basis, but is rather

17  supported by mere speculation and hypothetical situations.  Thus, the Court finds that

18  whether such opportunities would have been derived at all to be too speculative, remote,

19  and uncertain to recover damages under that theory.

20        Even if the question of whether such opportunities would have been derived at all

21  could be answered with any certainty, no reasonable basis for computing the value of

22  those damages exists.  Plaintiff has proffered no evidence of a track record that could be

23  used as a basis to estimate the licensing value of its technology, had it been patented.

24  Plaintiff states its technology is unique in that it does more than just treat the symptoms

25  of brain injuries and diseases.  Thus, it is hard to imagine the existence of another,

26  patented technology that would be similar enough to Plaintiff's technology to use as a

27  comparison in estimating the patented value of Plaintiff's technology.  Plaintiff intends

28  only to offer the opinion of a damages expert (Mr. Burns) that relies on the opinions of

09CV0986 JAH (WMC)

1 Ms. Lynch and on the economic and financial terms of transactions involving technology

2 used to treat diseases and disorders related to the central nervous system. The Court finds

3 this would not be a satisfactory basis on which to rest an estimate of damages resulting

4 from Plaintiff's purported lost-licensing opportunities.

5 In sum, Plaintiff's lost-licensing theory is too speculative and uncertain to permit

6 Plaintiff to introduce evidence in support thereof. Plaintiff's theory depends on the

7 actions of too many third parties and on too many contingencies. The mere probability

8 that Plaintiff would have realized licensing opportunities will not support such a claim nor

9 furnish the foundation necessary for such damages. Accordingly, **IT IS HEREBY**

10 **ORDERED** that Defendants' motion in limine, (Dkt. No. 132), is **GRANTED**. Plaintiff

11 is precluded from offering evidence in support of its lost-licensing opportunities theory of

12 damages at trial.

13 **IT IS FURTHER ORDERED** that the motion hearing currently set for today,

14 March 12, 2012, at 3:30 p.m., will instead be a telephonic status conference at which the

15 Court intends to discuss future dates.

16

17 DATED: March 12, 2012

18 JOHN A. HOUSTON
United States District Judge

19

20

21

22

23

24

25

26

27

28

4

09CV0986 JAH (WMC)

A33

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEUROREPAIR, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>THE NATH LAW GROUP et al.,<br><br>                Defendants. | Civil No. 09CV0986 JAH (WMC)<br><br>**ORDER DENYING PLAINTIFF'S _PRO SE_ MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND JUDGMENT [Doc. No. 164] AND DENYING AS MOOT DEFENDANTS' MOTION FOR REMAND [Doc. No. 176]** |

The background of this litigation is contained in this Court's pretrial order. [Doc. No. 148]. On September 27, 2012, this Court granted the Nath Law Group, et al.'s ("defendants") Motion In Limine No. 2 and dismissed Neurorepair, Inc.'s ("plaintiff") case for lack of standing. [Doc. No. 162]. On September 27, 2012, plaintiff, proceeding _pro se_, filed a Motion For Reconsideration and to Alter or Amend this Court's September 27, 2012 order pursuant to Federal Rule of Civil Procedure 59(e) on the ground that this Court committed clear error. [Doc. No. 164]. The motion was fully briefed, [Doc. Nos. 170 and 172], and this Court took the motion under submission without oral argument on October 12, 2012, [Doc. No. 168]. On February 22, 2013, defendants filed a Motion For Remand To State Court. [Doc. No. 176]. The motion was fully briefed, [Doc. Nos. 177 and 178], and this Court took the motion under submission without oral argument on April 15, 2013, [Doc. No. 179].

//

A review of the record reveals that, though plaintiff is represented by counsel, the instant motion was filed and signed by Matthew Klipstein, the principal of plaintiff who is not admitted to practice before this Court. As such, this Court finds that plaintiff's motion violates Civil Local Rule 83.3(g)(1), which expressly prohibits a party who has appeared through an attorney to subsequently act in the party's own behalf in the action. *See* Civil Local Rule 83.3(g)(1). Furthermore, a district court has no obligation to entertain *pro se* motions filed by a represented party. *See* Le v. Almager, 2013 WL 415632, *1 (N.D. Cal. 2013)(citing United States. v. El-Alamin, 574 F. 3d 915, 923 (8th Cir.2009); United States v. Hildreth, 485 F.3d 1120, 1125 (10th Cir.2007); United States v. Vampire Nation, 451 F.3d 189, 206 n. 17 (3rd Cir.2006); Abdullah v. United States, 240 F.3d 683, 686 (8th Cir.2001); Ennis v. LeFevre, 560 F.2d 1072 (2d Cir.1977)). In addition, plaintiff, a corporation, may only appear before this Court through a licensed attorney. *See* Civil Local Rule 83.3(k); *see also* Rowland v. California Men's Colony Carr Enterprises, Inc. v. United States, 698 F.2d 952, 953 (9th Cir. 1983)("28 U.S.C. § 1654 ... does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney.").

For the foregoing reasons, plaintiff's *pro se* Motion For Reconsideration, [Doc. No. 164], is **DENIED**. Furthermore, because this Court dismissed the instant case in its entirety, [Doc. No. 162], defendants' Motion For Remand, [Doc. No. 176], is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated: July 1, 2013

JOHN A. HOUSTON
United States District Judge

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Neurorepair, Inc., | CASE NO. 09CV0986-JAH(WMC) |
| Plaintiff, | **ORDER TAXING COSTS** |
| vs. | |
| The Nath Law Group, et al. , | |
| Defendants. | |

Upon application of The Nath Law Group and Robert P. Cogan, a hearing for taxation of costs was held on November 1, 2012 at 10:00 am. David Gerard Molinari representing plaintiffs, and Samuel B. Strohbehn, representing defendants, appeared telephonically. Plaintiff did not file any responsive pleading or opposition to the Bill of Costs.

Requested in the Service of Summons and Subpoena are charges for "check charges" in the amounts of $7.30 and $5.50, these are not taxable items and are denied.

Included in the "Exemplification and Copies" is a transcript for the hearing held on 9/17/2012. Pursuant to Civil LR 54.1(b)(2)(a) the requested amount of $77.18 is denied.

//

//

//

//

The below-listed expenses for deposition transcripts are not taxable and are denied:

| DATE | DEPONENT | ITEM | AMOUNT NOT TAXABLE |
|---|---|---|---|
| 4/29/2012 | Ross Epstein | Six-Day Expedite | $170.00 |
| 4/29/2012 | Ross Epstein | Condensed Transcript | $20.00 |
| 3/1/2011 | Gary M. Nath | Rough Disk | $238.00 |
| 12/16/2012 | Robert P. Cogan | Condensed Transcript | $20.00 |
| 2/16/2011 | Robert Cogan, Vol. 2 | 2-Day Expedited Svc | $546.75 |
| 3/15/2011 | Richard Jeremy Warburg MD | Exhibits Scanned to PDF | $159.90 |
| | **TOTAL** | | **$1,154.65** |

//

//

//

**Costs are taxed as follows:**

| Description | Amount(s) Requested | Amount(s) Taxed |
|---|---|---|
| Fees of the clerk | $465.00 | $465.00 |
| Fees for service of summons and subpoenas | $599.54 | $586.74 |
| Fees of the court reporter | | |
| Fees and disbursements for printing | | |
| Fees for witnesses | $357.00 | $357.00 |
| Fees for exemplification and copies | $2,038.98 | $1,961.80 |
| Docket fees under 28 U.S.C. § 1923 | | |
| Costs incident to taking of depositions | $28,105.79 | $26,951.14 |
| Costs as shown on mandate of Court of Appeals | | |
| Other costs as itemized: | | |
| *TOTAL COSTS TAXED* in favor of The Nath Law Group and Robert P. Cogan | $31,566.31 | $30,321.68 |

//

Counsel's attention is called to Local Rule 54.1.h which provides in part that a motion to re-tax by any party, in accordance with Rule 54(d), FRCivP and Local Rule 7.1, shall be served and filed within seven (7) days after receipt of the Order Taxing Costs, or unless within the seven (7) day period the court permits the motion to be made orally.

Dated: November 1, 2012

W. Samuel Hamrick, Jr., Clerk of Court

*S/ N. Prewitt*
Nancy S. Prewitt, CRD Supervisor

cc:     All Parties

UNITED STATES COURT OF APPEALS

FOR THE FEDERAL CIRCUIT

NeuroRepair, Inc. v. Nath Law Group, 2013-1073

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on behalf of attorney Matthew Klipstein, on June 19, 2014, I electronically filed in searchable Portable Document Format (PDF) the Corrected Appellant's Opening Brief using the CM/ECF system thereby affecting service on the following counsel of record, all of whom are registered for electronic filing to the best of my knowledge.

I have also served two (2) copies of the document to the counsel listed below by U.S. Mail.

Heather L. Rosing
Samuel B. Strohbehn
Klinedinst PC
501 West Broadway, Suite 600
San Diego, CA  92010
(619) 239-8131/(619) 238-8707
HRosing@klinedinstlaw.com
sstrohbehn@klinedinstlaw.com


I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of June, 2014 at Denver, CO.

Kimberlee M. Prechodko
Print Name

/s/ Kimberlee M. Prechodko

Form 19

FORM 19.  Certificate of Compliance With Rule 32(a)

---

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑    The brief contains [        *13, 135*        ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) , or

☐    The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑    The brief has been prepared in a proportionally spaced typeface using [                    *Microsoft Word 2010*                    ] in [                    *Times New Roman 14*                    ], or

☐    The brief has been prepared in a monospaced typeface using [    *state name and version of word processing program*    ] with [ [    *state number of characters per inch and name of type style*    ] ].

/s/ Matthew Klipstein, Esq.
_____
(Signature of Attorney)

Matthew Klipstein, Esq.
_____
(Name of Attorney)

Appellant
_____
(State whether representing appellant, appellee, etc.)

June 19, 2014
_____
(Date)